# EXHIBIT A

Case Number: CACE-25-012918 Division: 25

Filing # 230268447 E-Filed 08/26/2025 03:33:29 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

R.R.,

                    Plaintiff,

v.

MOTEL 6 OPERATING L.P., a
Delaware limited partnership, and G6
HOSPITALITY PROPERTY LLC, a
Delaware limited liability company,

                    Defendants.

CASE NO.: _____

_____/

## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER
## AND LEAVE TO PROCEED VIA INITIALS WITH BRIEF IN SUPPORT

### INTRODUCTION

Plaintiff, R.R., requests leave to bring this action anonymously in accordance with the

Florida Rules of Judicial Administration and Civil Procedure, and for Defendants to be ordered to

keep Plaintiff's identity confidential throughout the discovery process and until the Court further

addresses the issue with the benefit of a full record. Regardless of the outcome of this motion,

Plaintiff agrees to disclose her name to the Defendants.

### FACTS

As described thoroughly in the Complaint, Plaintiff was ripped from her home and sex

trafficked as a minor, ostensibly forced to be a sex slave to many hundreds if not thousands of men

over many years. During this time, she was forced to engage in illegal activities against her will,

and she is at massive risk of retaliation by the traffickers that once imprisoned her; there is also

### ▪ VICTIM'S VOICE, LLC ▪

**100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700**

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 08/26/2025 03:33:28 PM.****

significant risk to the victims still being trafficked by Plaintiff's traffickers and public policy

supports confidentiality to encourage other victims to come forward with their own claims.

Given the extremely intimate and private nature of the information Plaintiff must disclose

to prosecute her case, her age, risk of retaliation against her and other innocent victims, and based

on advice of counsel, Plaintiff does not wish to be publicly identified as a sex trafficking victim

although she agrees to disclose her name to the Defendants.

**LEGAL ARGUMENT**

1. Florida R. Civ. P. 1.100(c) states:

> Every pleading, motion, order, judgment, or other paper shall have a caption
> containing ... the name of the first party on each side with an appropriate
> indication of other parties, and a designation identifying the party filing it....
> All papers filed in the action shall be styled in such a manner as to indicate
> clearly the subject matter of the paper and the party requesting or obtaining
> relief.

2. Florida R. Civ. P. 1.020 requires all court filings to comply with Fla. R. Jud. Admin.

   2.425. *See* Fla. R. Civ. P. 1.020. Fla. R. Jud. Admin. 2.425 provides, in pertinent part:

   > (a) Limitations for Court Filings. Unless authorized by subdivision (b),
   > statute, another rule of court, or the court orders otherwise, designated
   > sensitive information filed with the court must be limited to the
   > following format:
   >
   > (1) The initials of a person known to be a minor;
   > Fla. R. Jud. Admin. 2.425 ("Rule 2.425").

3. Next, Florida Rule of Judicial Administration 2.420 provides that "protected information

   regarding victims of child abuse or sexual offenses §§ 119.071(2)(h), 119.0714(1)(h), Fla.

   Stat." shall be confidential. Fla. R. Jud. Admin. 2.420(d)(l)(B)(xiii).

4. Section 119.071(2)(h) provides that the following information is confidential:

   > a. Any information, including the photograph, name, address, or other fact,
   > which reveals the identity of the victim of the crime of child abuse as

**▪ VICTIM'S VOICE, LLC ▪**

100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700

defined by chapter 827 or that reveals the identity of a person under the age of 18 who is the victim of the crime of human trafficking proscribed in s. 787.06(3)(a).

b. Any information which may reveal the identity of a person who is a victim of any sexual offense, including a sexual offense proscribed in chapter 794 [Sexual Battery], chapter 796 [Prostitution], chapter 800 [Lewdness; Indecent Exposure], chapter 827 [Abuse of Children], or chapter 847 [Obscenity].
§119.071 (2)(h), Florida Statutes.

5. Section 119.0714(1)(h) provides that information that is confidential pursuant to section 119.071(2)(h) is exempt from disclosure as a public record. *See* section 119.0714(1)(h), Florida Statutes.

6. Further, the trial court has inherent powers to protect the interests of similarly situated Plaintiffs. *See* Slate, By & Through Office of State Attorney for Twentieth Judicial Circuit v. Sievert, 312 So. 2d 788, 791 (Fla. 2d DC A 1975) (recognizing inherent authority of the court to act whenever necessary to protect the interests of minors); cf. Barron v. Florida Freedom Newspapers, Inc., 531 So. 2d 113, 118 (Fla. 1988) (acknowledging that despite strong presumption of openness for all court proceedings, the court may order closure of court proceedings or records to comply with established public policy).

7. Therefore, as per the Florida Rules of Civil Procedure and Judicial Administration, this court is empowered to keep Plaintiff's identity confidential; additionally, the Court has inherent authority to close proceedings and keep Plaintiff's identity confidential to comply with public policy.

8. The Federal Rules of Civil Procedure, from which Florida mirrored its Rules of Civil Procedure, follow a similar scheme and require that "every pleading" "must name all the parties." Fed. R. Civ. P. 10(a). Doe v. Frank, 951 F.2d 320, 322 (11th Cir. 1992).

**▪ VICTIM'S VOICE, LLC ▪**

**100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700**

9. The "ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness'" in judicial proceedings. Doe v. Frank, 951 F.2d 320, 323 (11th Cir. 1992). "In evaluating whether a plaintiff has shown that [s]he has such a right, the court should carefully review all the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns."

10. In Plaintiff B v. Francis, the Eleventh Circuit sets forth a three-part test to evaluate a plaintiff's claim of a substantial privacy right in order to proceed anonymously in a civil suit:

> First, are the plaintiffs seeking anonymity challenging governmental activity? Second, will they be required to disclose information of the utmost intimacy? Third, will the plaintiffs be compelled to admit their intention to engage in illegal conduct and thus risk criminal prosecution? Plaintiff B v. Francis, 631 F.3d 1310, 1315-1316 (11th Cir. 2011).

11. The Eleventh Circuit also held that, along with these factors, a court "should carefully review all the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." S.B. v. Fla. Agric. & Mech. Univ. Bd. of Trs., 823 F. App'x 862 (11th Cir. 2020) (quoting Francis, 631 F.3d at 1316).

12. In Francis, the Circuit court determined Plaintiff's identity should remain confidential even though "[t]he only relevant consideration of the three-part SMU [S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe, 599 F.2d 707, 713 (5th Cir. 1979)] test here is the second question: would denying the plaintiff's anonymity at trial require them to disclose information of utmost intimacy." ("[T]he district court gave inadequate

▪ **VICTIM'S VOICE, LLC** ▪

100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 • Phone: 754-335-4700

consideration to the degree of intimacy the Plaintiffs' testimony would reach. … Where the issues involved are matters of a sensitive and highly personal nature … the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a very private matter.") (Plaintiff B v. Francis, 631 F.3d 1310, 1316-17 (11th Cir. 2011))

13. The Eleventh Circuit also clarified that "[a]fter the Stegall court clarified that the three-part SMU test was only the first step for evaluating whether to let a plaintiff proceed to trial anonymously, courts have considered other contexts in analyzing all the circumstances of a given case. Courts have looked at factors such as whether the plaintiffs were minors, Stegall, 653 F.2d at 186, whether they were threatened with violence or physical harm by proceeding in their own names, id., and whether their anonymity posed a unique threat of fundamental unfairness to the defendant. See SMU, 599 F.2d at 713.

14. In the present case, the test factors fall strongly in favor of Plaintiff's confidentiality (there is no more intimate and private information than what Plaintiff will be disclosing; Plaintiff and other innocent victims are at an extreme risk of harmful retaliation; Plaintiff's young age; Defendants will be provided with identifying information and will not be prejudiced; public policy supports confidentiality to encourage other victims to come forward with their own claims).

15. Plaintiff's request for confidentiality is no broader than what is necessary to protect her and no less restrictive measures are available.

## CONCLUSION

Based on the foregoing, Plaintiff requests this Court grant her leave to proceed confidentially under a pseudonym until further order of this Court so that the parties can establish a record on the issue of whether the potential harm the victims would suffer from disclosure outweighs the presumption

▪ **VICTIM'S VOICE, LLC** ▪

100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700

of openness to the public and harm to the Defendants.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via the Florida E-

Portal with the Complaint on August 26, 2025.

Victim's Voice, LLC
**Attorneys for Plaintiff**
100 N. Federal Hwy, 4th Floor
Fort Lauderdale, FL 33301
Telephone: 754.335.4700
Facsimile: 954.994.0040
Primary email: anthony@victimsvoice.law
Secondary email: vv.001@victimsvoice.law

By: */s/: Anthony Chiarello*
Anthony Chiarello, Esq.
Florida Bar No.: 73760

Case Number: CACE-25-012918 Division: 25

Filing # 230268447 E-Filed 08/26/2025 03:33:29 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

R.R.,

               Plaintiff,

v.

MOTEL 6 OPERATING L.P., a
Delaware limited partnership, and G6
HOSPITALITY PROPERTY LLC, a
Delaware limited liability company,

               Defendants.

CASE NO.: _____

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, R.R., by and through undersigned counsel, hereby files her Complaint against

Defendants, MOTEL 6 OPERATING L.P., and G6 HOSPITALITY PROPERTY LLC, and as

grounds therefore states as follows:

### INTRODUCTION

1. This is an action for damages in excess of Fifty Thousand Dollars ($50,000.00).

2. This action for damages is brought by the Plaintiff, R.R., a survivor of sex trafficking,

    under Florida State Law as well as the federal William Wilberforce Trafficking Victims

    Protection Reauthorization Act of 2008 (hereinafter the "TVPRA").

3. R.R. files this civil lawsuit seeking compensation for the harm she suffered when she was

    forcibly sex-trafficked in a hotel owned, operated, maintained, and controlled by

    Defendants, their owners, managers, employees and agents.

▪ **VICTIM'S VOICE, LLC** ▪

**100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700**

1

4. Defendants, MOTEL 6 OPERATING L.P. and G6 HOSPITALITY PROPERTY LLC, (collectively with their managers, employees and agents who, for the remainder of this complaint, always acted the course and scope of their employment and for the benefit of the Motel 6 by G6 Hospitality, shall be referred to as the "Harboring Defendants") owned and managed the Motel 6 where Plaintiff, R.R., was trafficked located at 5909 American Way, Orlando, FL 32819 between March of 2006 and June 2022.

5. The Harboring Defendants, through their owners, operators, managers, supervisors and employees controlled, operated and were responsible for the Motel 6 described above where Plaintiff, R.R., was trafficked.

6. As described below, R.R. was forcibly sex trafficked as a direct result of a joint business venture between Plaintiff's sex trafficker and the Harboring Defendants who purposely and knowingly cooperated with and participated in this sex trafficking enterprise. R.R.'s trafficker purposely chose this hotel to sex traffic R.R. because he knew his commercial sex trafficking enterprise would be facilitated by the cooperation of the Harboring Defendants, and by his prior relationship with the Harboring Defendants at the Motel 6 hotel.

7. For approximately 6 years, from 2009 through 2015, R.R. just a 16-year-old girl, was repeatedly trafficked for sex at the Motel 6 by her trafficker "Zaya" and his associates.

## SEX TRAFFICKING IN THE TVPRA

8. According to the TVPRA "[a]t least 700,000 persons annually, primarily women and children, are trafficked within or across international borders. Approximately 50,000 women and children are trafficked into the United States each year."

**▪ VICTIM'S VOICE, LLC ▪**

100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700

2

9. The stated purpose of the TVPRA is "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims."

10. Sex trafficking is defined in the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion or in which the person induced to perform such act has not attained 18 years of age."

11. Recognizing that criminal penalties for pimps and sex buyers were insufficient, Congress passed Section 1591 of the TVPRA which provides a civil remedy against everyone "involved" in the sex trafficking enterprise, specifically including hotels like the Harboring that harbored R.R. for sex trafficking purposes.

12. Under the TVPRA, every entity who knowingly harbors another for a commercial sex act that was provided through force, fraud, and coercion or from any person, or merely induced to provide same from a person under the age of 18 years old, are guilty of sex trafficking; again, this includes the Harboring Defendants' hotel and others like it.

13. Further, any person who knowingly benefits from a commercial sex trafficking enterprise based on forced sex trafficking is jointly and severally liable for the damages arising from said trafficking.

14. R.R. was one of the 50,000+ victims of this form of sex slavery and a victim of sex trafficking within the meaning of the TVPRA.

15. The Harboring Defendants' cooperation with R.R.'s traffickers, as described herein,

constitutes a violation of the TVPRA, and R.R. would not have been trafficked without the acts and omissions of Harboring Defendants.

16. R.R. brings this civil action under 18 U.S.C. §1595 seeking recovery for six years of forced sex slavery at the Motel 6, with the cooperation and participation of the Harboring Defendants.

## HARBORING DEFENDANTS VIOLATED THE TVPRA

17. Forced sex trafficking of people like R.R. is prevalent throughout the United States because hotels like the Motel 6 provide a non-traceable, low-overhead, low-risk commercial enterprise for sex traffickers.

18. Hotels like the Motel 6 also provide easy access, anonymity, privacy, and discretion for buyers and, with a hotel's participation, such an enterprise can remain hidden from law enforcement.

19. The TVPRA put the Motel 6 on notice of the high likelihood of sex trafficking occurring on their hotel premises.

20. Furthermore, G6 Hospitality (the franchisor of Motel 6) is a signatory to the Child Protection Code of Conduct ("The Code") established in 2004 (https://thecode.my.salesforce-sites.com/apex/LCRProfile1?country=USA), so it explicitly adhered to a set of codes that put it on notice of R.R.'s sex trafficking; sadly, had it complied with The Code, R.R. would never have been harbored at their hotel.

21. Upon information and belief, the Motel 6 had policies and procedures designed to identify and report the obvious signs of sex trafficking, so the Harboring Defendants were well-aware of the violence, manipulation, lies, debt bondage, physical restraint, drugs, and

### ▪ VICTIM'S VOICE, LLC ▪
100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700

4

coercion used to force R.R. into sex trafficking.

22. Based on its sex-trafficking policies and a combination of well-documented indicators, the Harboring Defendants knew or should have known that R.R. was being sex trafficked at its hotel, but it chose to ignore these indicators and eschew its own policies; rather, the Harboring Defendants cooperated with R.R.'s Traffickers to traffic R.R. for profit.

23. At all material times, the Harboring Defendants, individually and collectively through its agents, employees, and franchisees, aided, abetted, concealed, confined, benefitted, harbored and profited from R.R.'s sex trafficking at its hotel through a venture with Plaintiff's Traffickers, which caused R.R. foreseeable and catastrophic damages.

## SEX TRAFFICKING VENTURE UNDER THE TVPRA

24. A sex trafficking venture under the TVPRA is the participation in a common sex trafficking enterprise that involves risk and potential profit. (*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021))

25. The Harboring Defendants participated in a common sex trafficking venture with R.R.'s traffickers where, together, they minimized their risks and maximized their profits.

26. The Harboring Defendants maximized profits from increased room occupancy, increased franchise royalty fees, increased property value, on-site food and beverage and condom sales, ATM fees, bribes, kickbacks, tips, drugs, sexual favors and other remuneration brought in by R.R.'s traffickers and the "Johns" that visited the hotel; simply put, participation with R.R.'s Traffickers helped keep the hotel full.

27. In return, the Harboring Defendants created an environment where R.R. could be sex trafficked out of the public view and away from prying eyes of law enforcement; this

environment was specifically designed to chill any actions that might interfere with the trafficking of (people like) R.R. at the subject hotel.

28. Harboring Defendants purposely chose not to implement their own sex trafficking policies, educational or training programs, and they purposely chose not to implement policies (or they chose to violate the policies they had) that would have identified, reported, documented, investigated, prevented or ended the sex trafficking at the hotel; this is especially egregious as their policies were designed to prevent sex trafficking and provide safe lodging.

29. Harboring Defendants willfully created an environment where a sex-trafficking venture flourished, it did flourish, they knew it flourished, and, as a result, R.R. was trafficked at the Motel 6.

30. Furthermore, Harboring Defendants' participation in this this sex-trafficking enterprise was through the acts of their owners, employees, and agents acting within the scope and course of their employment for the benefit of the Harboring Defendants.

31. As a direct and proximate result of the Harboring Defendants' cooperation, willful blindness, negligence, facilitation, malfeasance, and consistent refusals to adhere to common sense policies that would have eliminated human trafficking at the subject hotels, 15-year old R.R. was drugged, starved, beaten, sold, assaulted, abused, and repeatedly raped, in a joint venture between her sex traffickers and the Harboring Defendants at the subject hotels in violation of the TVPRA.

### JURISDICTION AND VENUE

32. This Honorable Court has jurisdiction and venue over this matter because Defendants are foreign corporations with agents and other representatives doing business in Broward County, Florida.

### PARTIES

**I.  Plaintiff R.R.**

33. Plaintiff, R.R., is a Florida resident and is otherwise *sui juris*. She may be contacted through her lead counsel, whose information is contained below.

34. R.R. is a victim of sex trafficking under the TVPRA because she was harbored, transported, or provided and forced to commit a commercial sex act at the subject hotel located at address described above from 2009 until December of 2015.

35. Given the nature of the case, R.R. is identified in this Complaint by a fictitious name to prevent public disclosure. Plaintiff's counsel has either previously disclosed full names to defense counsel or will do so immediately upon identification of defense counsel.

36. When filing this Complaint, Plaintiff's counsel also filed a Motion for Protective Order seeking Court permission for Plaintiff to proceed anonymously.

**II.  Motel 6 Operating L.P. and G6 Hospitality Property LLC**

37. Motel 6 Operating L.P. is a Delaware limited partnership that, upon information and belief was authorized to do, licensed to do, and was doing business at its principal place of business, in Orange County, in the State of Florida offering the harboring hotel as a place of public lodging; Defendant owned the Motel 6 by G6 Hospitality located at 5909 American Way, Orlando, FL 32819 ("Motel 6") until October 2012.

### ▪ VICTIM'S VOICE, LLC ▪
**100 N. Federal Hwy, 4ᵗʰ Floor, Fort Lauderdale, FL 33301 • Phone: 754-335-4700**

38. G6 Hospitality Property LLC is a Delaware limited liability company that was authorized to do, licensed to do, and was doing business at its principal place of business in Orange County, in the State of Florida offering the harboring hotel as a place of public lodging; Defendant owned the Motel 6 by G6 Hospitality located at 5909 American Way, Orlando, FL 32819 ("Motel 6") between October 2012 and June 2022.

39. All references to Harboring Defendants include any and all departments, divisions, offices, agencies, subsidiaries, or corporate affiliates, whether domestic, foreign, and/or international. These references also include any and all directors, officers, agents (either with direct/actual or implied/apparent authority), employees, persons, firms, or franchisors, who have taken any action or committed any omission on behalf of Harboring Defendants now or at any time relevant to the claims herein.

40. Any and all references to the actions or omissions by Harboring Defendants (either with direct/actual or implied/apparent authority) are specifically alleged to have been taken or omitted in the course and scope of said person's employment or agency and for the benefit of the Defendants, and were the kind of services they were employed to perform; their services were provided substantially within both the time and space limits of their employment; and they were motivated, at least in part, by a purpose to serve and benefit their employers.

41. Based upon information and belief, at all relevant times, Motel 6 is a motel branded by G6 Hospitality and has been owned and/or operated and/or managed by or through G6 Hospitality since at least 2009.

42. Harboring Defendants directly participated in a commercial venture that included the harboring and forced trafficking of R.R., therefore becoming a perpetrator of her sexual trafficking under the TVPRA.

43. Harboring Defendants knowingly benefitted from this sexual trafficking enterprise in which they knew or should have known that Plaintiff was being sexually trafficked against her will.

## BACKGROUND AND FACTS

### Motel 6 had Knowledge of Sex Trafficking

44. The widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what the Harboring Defendants knew or should have known regarding the forced sex-trafficking of R.R. at the harboring hotel.

45. Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[1] This is no accident. For years, sex traffickers have been able to reap enormous profits with "little risk when attempting to operate within hotels."[2] In 2014, 92 percent of calls to the Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[3] Hotels have been found to account for over 90 percent of

---

[1] "This is not only a dominant issue, it's an epidemic issue." See Jaclyn Galucci, Human Trafficking is an Epidemic in the U.S. It's Also Big Business, Fortune, April 2019, at https://fortune.com/2019/04/14/human-sex-trafficking- usslavery/ citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council. "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." Id.

[2] See Human Trafficking in the Hotel Industry, Polaris Project, February 10, 2016, at https://polarisproject.org/blog/2016/02/human-trafficking-in-the-hotel-industry/.

[3] Michele Sarkisian, Adopting the Code: Human Trafficking and the Hospitality Industry, CORNELL   HOSPITALITY   REPORT,   15(15),   3-10   (2015),   available   at:

commercial sexual exploitation of children.[4]

46. Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Motel 6, on best practices for identifying and responding to forced sex trafficking.[5]

47. Widely recognized signs of forced sex trafficking, which can be observed by hotel staff and which the Harboring Defendants were made of aware of, include but are not limited to:

   a. Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

   b. Individuals show signs of physical abuse, restraint, and/or confinement;

   c. Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

   d. Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

   e. Individuals lack freedom of movement or are constantly monitored;

   f. Individuals avoid eye contact and interaction with others;

---

https://humantraffickingsearch.org/wp-content/uploads/2019/05/Adoptingthecode.report.cornell.pdf

[4] Erika R. George & Scarlet R. Smith, In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking in Modern Slavery, 46 N.Y.U. J. INT'L L. & POL. 55, 92 (2013).

[5] See, e.g., Department of Homeland Security, Blue Campaign Toolkit, available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing & Exploited Children, Child Sex Trafficking Overview, available at: https://www.missingkids.org/content/dam/missingkids/pdfs/CST%20Identification%20Resource.pdf; Love 146, red Flags for Hotel and Motel Employees, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and- Reporting-Love146.pdf; Texas Attorney General, Human Trafficking Red Flags, available at: https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf.

g.  Individuals have no control over or possession of money or ID;

h.  Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

i.  Individuals have few or no personal items—such as no luggage or other bags;

j.  Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

k.  A group of girls appears to be traveling with an older female or male;

l.  A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

m.  Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

n.  Possession of bulk sexual paraphernalia such as condoms or lubricant;

o.  Possession or use of multiple cell phones;

p.   Paying nightly for extended stays with cash; and

q.  Possession or use of large amounts of cash or pre-paid cards.

48. The Harboring Defendants were aware or should have been aware of these signs of forced sex trafficking when operating and managing the harboring hotel, when enacting and enforcing policies and procedures applicable to that hotel, and when training, educating, and supervising the staff of said hotel, and when dealing with Plaintiff and her Trafficker.

49. Given the prevalence of forced sex trafficking in hotels and the abundance of information about how franchisors, owners, and hotel employees can identify and respond to sex trafficking, it is obvious that the decision of a hotel chain to continue generating revenue from sex traffickers without taking reasonable steps to identify and prevent forced sex

trafficking in its hotels is purposely made in its own financial interest by facilitating and participating in the forced sex trafficking.

50. Accordingly, many hotels – upon information and belief, including the hotel and franchisor involved in the present suit – have told the public that they have assumed the duty and responsibility to stop sex trafficking in their hotels. Particularly for those who are signatories of The Code, as described above.

51. Unfortunately for R.R., the Harboring Defendants' promises have proven empty. The Harboring Defendants failed to take any action in response to their actual knowledge of forced sex trafficking, including the forced sex trafficking of R.R. Instead, the Harboring Defendants continued to financially benefit from providing a venue for sexual exploitation of victims, including R.R., who was repeatedly sexually assaulted, again and again, for 6 years at the Motel 6.

### R.R. was Forcibly Sex Trafficked at the Harboring Defendants' Hotel

52. R.R. is a survivor of human sex trafficking, and her life story reads like a tragedy.

53. In 2009, R.R. met "Zaya" through mutual friends while she was still attending high school. R.R. was fifteen years old.

54. For approximately 6 years, until late 2015, R.R. was forced to be a sex slave in a sex trafficking venture between Harboring Defendants and her Trafficker, while being serially harbored at the Motel 6.

55. Not uncommon for teen girls, R.R. grew up with a strained relationship with her parents.

56. In 2009, R.R. desperately needed money to assist her severely mentally handicapped uncle (who has since committed suicide), and her parents could not afford to help.

57. Zaya sensed R.R. was young, naïve and vulnerable and targeted her for trafficking.

58. Zaya promised 15-year-old R.R. that he could help her get the money she needed to take care of her uncle and would help her however he could.

59. Zaya earned R.R.'s trust by being kind to her, isolating her from her parents, and showing her photos of expensive vehicles and homes to groom her into thinking he could help her earn an extravagant lifestyle.

60. Zaya pressured R.R. into exotic dancing, but she balked at the nature of such a job; then he threatened and beat her, forcing her into a sexual servitude from which she could not leave.

61. Instead of helping R.R., Zaya brought her to the Motel 6, took her phone and her other possessions, restrained her, imprisoned her, drugged her, raped her, threatened her, beat her, and announced she would now be working for him and his associates (collectively, "Zaya"). He forced her to work as his sex-slave, forcing her to perform commercial sexual acts with strangers and kept all the money, leaving R.R. totally captive, drugged and dependent on him, with no means of escape.

62. During this time Zaya controlled every aspect of R.R.'s life: he took away most of her possessions, including her money and ID; he restricted her access to food, hygienic necessities, clothing, and sleep; he turned her into an object of commerce by forcing her to wear a sexually explicit "uniform" of his choosing marking her as a sex slave who was always "on the clock"; he threatened her with extreme violence and death if she refused to comply with the sexual demands of complete strangers or if she attempted to disobey him; he drugged her; he constantly surveilled and physically restrained her; he would not let her speak on a phone without his supervision; he would tightly grip her wrist and forcibly

escort her to and from the Harboring Defendants' hotel rooms and, simply put, he forced her to be a subhuman slave he sexually exploited for his own profit with absolutely no regard to her wellbeing or her humanity, as long as she continued to turn a profit for him.

63. R.R. was sexually assaulted thousands of times while at the subject hotels, including by Zaya, and by the Harboring Defendants' owners, managers, employees and/or agents.

64. For 6 years R.R. was merely a sexual object - bought, sold and sexually abused by anyone who paid; this has permanently and catastrophically altered R.R.'s life.

65. As can be reasonably expected, the indicia of being forcibly sex-trafficked, every day, *for 6 years*, were omnipresent, open and obvious to the Harboring Defendants.

66. The Harboring Defendants were trained to identify the open and obvious signs that R.R. was being forcibly sex trafficked and had crafted policies to report sex trafficking, as a signatory to The Code, as described above. Incredulously, the Harboring Defendants willingly participated in this venture with R.R.'s trafficker, Zaya, so they eschewed their own policies, refused to report what they saw and gladly profited from their own participation in Zaya's sex-trafficking of R.R.

67. The omnipresent signs of R.R.'s trafficking included:

    a. 16 year-old R.R. was forced to perform commercial sex acts through force, fraud, and coercion, through physical and mental abuse, and by threatening her with harm to herself and her family, and by referencing other individuals Zaya had previously hurt;

    b. Zaya frequently yelled at R.R. and physically shoved or jerked her around, often in front of Harboring Defendants including stating he would "beat her skull in";

    c. Zaya either paid or forced R.R. to pay for the rooms in her name; Harboring Defendants rented to R.R. even though she was clearly under 18 and their policies forbade renting to obvious minors;

d.  R.R. and/or Zaya were allowed to consistently pay for rooms with cash or prepaid credit cards over a 6-year period, sometimes refused to provide identification and always paid daily, even during extended stays, even though industry standards and their own policies disapproved of such payments;

e.  R.R. checked into and out of the subject hotels with no purse, limited possessions, no luggage, a small backpack at most, no toiletries and no other items that a hotel guest would normally possess when checking into a motel, especially for an extended stay – sometimes for weeks or months at a time;

f.  R.R. rarely had her ID (it was kept by Zaya);

g.  The Harboring Defendants' owners, managers, employees and/or agents could see that Plaintiff was extremely young to frequently be seen with random men significantly older than her;

h.  At check-in R.R. was frequently bruised, disheveled, dressed in sexually suggestive clothing/ lingerie, and under Zaya's physical grip and control; she did not make eye contact with the Harboring Defendants and was often crying;

i.  R.R. was always dressed in her "uniform" which was sexually explicit and inappropriate for her age, the weather, and the public spaces around the hotel, and had limited access to any other clothing;

j.  Harboring Defendants interacted with and permitted R.R. to solicit men for sex near the front desk and in other public spaces around the hotel while they were present, usually while in her "uniform";

k.  Harboring Defendants ignored R.R.'s visible signs of torment and abuse, including malnourishment, poor hygiene, fatigue, sleep deprivation and signs of drug use, cuts, scrapes, scratches, welts, red marks, bruises, split lips, black eyes, patches of missing hair, cigarette burns, and other such physical signs of physical and psychological abuse;

l.  R.R. frequently left blood in her hotel room from beatings by Zaya and the staff never reported same, Harboring Defendants never asked Plaintiff if she was OK and ignored multiple solicitations by R.R. for help;

m.  Harboring Defendants were within earshot of R.R. many times when she was moaning from pain, crying, or asking for help;

n.  Housekeeping witnessed "Johns" fleeing from a room after physically assaulting

**▪ VICTIM'S VOICE, LLC ▪**

100 N. Federal Hwy, 4ᵗʰ Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700

15

R.R., but ignored her solicitations for help as she ran from the room bleeding and with torn and missing clothing;

o.  On several occasions R.R. ran into the lobby or accosted Harboring Defendants and asked to use the telephone or call the police so she could escape Zaya, but she was always refused assistance;

p.  R.R. would frequently exit the hotel lobby crying or despondent while with Zaya.

q.  The Harboring Defendants' owner, managers, employees and/or agents would hear sounds of abuse, physical violence, screaming, and crying coming from R.R.'s room, sometimes involving R.R.'s punishment for attempts to escape her captivity or between R.R., Zaya and "Johns";

r.  R.R.'s demeanor showed obvious signs of fear and anxiety, she was always visibly nervous, despondent and afraid when interacting with Harboring Defendants;

s.  R.R. was not allowed to communicate with Defendants' employees without Zaya present, was not allowed to sign in, was not allowed to have a key to her room, and was not allowed to pay for her room without Zaya present;

t.  R.R., frequently showed signs of disorientation and impairment from being kept in a drugged state by Zaya;

u.  R.R. was physically restrained by Zaya (often forcibly jerked by her arm) in front of the Harboring Defendants, frequently when entering or leaving the hotel;

v.  Harboring Defendants often made faces or rolled their eyes in disgust at R.R. and mocked her as she was escorted on and off the property under physical restraint by Zaya in plain view of them;

w.  Harboring Defendants witnessed that R.R. was constantly monitored by Zaya when she was in the lobby, public spaces and coming in and out of rooms;

x.  A constant stream of men – 15 or more per day – came and went from R.R.'s rooms staying only for a short period, often through the lobby in clear view of Harboring Defendants, without luggage or possessions; surveillance cameras captured the visits. Over the course of 6 years that was thousands of short-term visitors to this obvious minor's room for 20 minutes at a time;

y.  Zaya forced R.R. to decline housekeeping and rarely allowed Harboring Defendants into the room that they rented on a night-by-night basis;

z.  On the occasions Harboring Defendants observed R.R.'s room it showed signs of sex trafficking – sex and drug paraphernalia, condom boxes, condoms in the trash cans, messy, unclean from denying housekeeping for long periods;

aa. R.R. and Zaya constantly needed additional towels and sheets at all times of the day or night and could be seen taking out their own trash; sheets consistently soiled with blood and bodily fluids were given to Harboring Defendants;

bb. During the time period R.R. was trafficked at the subject hotels, her trafficker and "Johns" frequently used the on-premises ATM and exhibited no signs that they were hotel guests, such as having any luggage or bags;

cc. Zaya loitered in the Harboring Defendants' parking lots all day and night while R.R., and "Johns," made frequent trips to Zaya's vehicle throughout the night;

dd. Zaya had suspicious individuals loitering with him while trafficking R.R. who seemed inappropriately aged to be around R.R.;

ee. Zaya openly paid for assistance from hotel management, ownership and staff;

ff. The Harboring Defendants received a share of the Zaya's profits as tips, bonuses, sexual favors, bribes, kickbacks, drugs and other remuneration for the use of the hotel, wi-fi, towels, sheets, and for acting as lookouts and informants as part of the sex trafficking enterprise;

gg. The Harboring Defendants acted as informants and lookouts in the course and scope of their employment and for the benefit of their employer; specifically, they warned Zaya when law enforcement was approaching, or other customers were complaining so he could conceal R.R.'s trafficking;

hh. The Harboring Defendants frequently informed Zaya when R.R. attempted to leave the hotel property;

ii. R.R. overheard Harboring Defendants directing employees to "double check" for cops, or that police were on the way and to warn Zaya;

jj. R.R. saw Harboring Defendants warn Zaya when there was too much activity coming from the rooms where she was trafficked (or police were coming or complaints came in), and relocated her to a more secluded portion of the hotel – to avoid detection of their trafficking enterprise;

kk. Police frequently came to the hotel to investigate allegations of prostitution and other crimes, but Harboring Defendants would warn Zaya of the police's

(impending) arrival, and denied Zaya's trafficking of R.R. when asked about such activities by authorities;

ll. Zaya openly operated the sex trafficking enterprise and openly carried weapons at the Harboring Defendants' premises;

mm. The rooms where R.R. was forcibly sex trafficked were sometimes located close enough to the lobby that trafficking activities were clearly visible;

nn. Harboring Defendants allowed Zaya to "back in" to parking spaces so his license plate was difficult to read in an effort to avoid detection and identification by law enforcement even though this was against policy;

oo. Zaya had prior dealings with the Harboring Defendants involving forced sex trafficking, which were reinstated when he started trafficking R.R.;

pp. For years Zaya had a sex trafficked enterprise with the Harboring Defendants at the subject hotel prior to R.R.;

qq. Based on actions and communications between Zaya and Harboring Defendants, Zaya was a repeat customer, even at the initial check in;

rr. Zaya chose to traffic R.R. at the subject hotels because of prior dealings with the Harboring Defendants and knew he could operate the sex trafficking enterprise "safely" at these hotels;

ss. R.R. heard Zaya state that he knew personnel at the subject hotels and there would be no trouble there;

tt. Harboring Defendants continuously renewed their business relationship with Zaya over a six-year period by re-renting rooms to him despite their actual and constructive knowledge that R.R. was being trafficked by Zaya;

uu. R.R. overheard the Harboring Defendants say things to Zaya along the lines that prostitution was bringing in a lot of money.

vv. By renting a room to R.R.'s trafficker, Defendants were knowingly associating with him in forcing R.R. to serve their business objectives.

ww. There was a booming sex trafficking industry at the subject hotel before and during the time that R.R. was trafficked at said hotel;

xx. The Harboring Defendants showed indifference to R.R.'s obvious physically

troubled condition;

yy. The subject hotels were in an area known to be used for drugs, trafficking, and prostitution;

zz. Zaya conducted multiple illegal drug sales throughout the day at the subject hotels in adjoining rooms or in the parking lot;

aaa. The Harboring Defendants failed and refused to hire security personnel to curb the sex trafficking at the subject hotels;

bbb. The Harboring Defendants failed to post legally mandated anti-trafficking signs and notices at the subject hotels;

ccc. The Harboring Defendants controlled the training, policies, protocols, rules, and guidelines at the subject hotel. Given the availability of training materials from the American Hotel Lodging Association, ECPAT-USA, and other resources, the Harboring Defendants knew or should have known of the "critical role" that the hotel industry plays in "enabling" the sex trade, and of the "widespread national epidemic of hotel/motel sex trafficking." Despite that, the Harboring Defendants failed to adequately implement education, training, and policies to prevent sex trafficking at their hotel. Because of the Harboring Defendants' failures, R.R. was repeatedly victimized and trafficked for sex on the subject hotel's premises; and

ddd. The Harboring Defendants "knowingly benefited" from R.R. being sex trafficked because they received payment for the rooms rented to individuals they knew or should have known were engaged in sex trafficking. They also financially benefitted from payments received for Zaya's use of hotel Wi-Fi, which enabled the subject sex trafficking to occur, as Zaya advertised R.R. on multiple trafficking websites, none of which were blocked.

68. Not only was R.R. forced sex trafficking open and obvious, but the Harboring Defendants and their employees were uniquely positioned to observe its signs, should have observed its signs and they did observe its signs. Additionally, Harboring Defendants constantly monitored guest activity on the premises and were well-trained to identify and report any sex trafficking, which they willingly chose not to do.

■ **VICTIM'S VOICE, LLC** ■

100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700

19

69. In fact, the Harboring Defendants' employees had conversations with R.R., observed her entering and leaving the premises, observed her in the lobby area, and directly interacted with her. They frequently reacted to R.R.'s presence in the hotel either with social cues of disgust, such as eye rolling, frowning, head shaking, or making derogatory statements under their breath, or with knowing and salacious statements, leering, or salacious comments regarding sex or Plaintiff's availability for sex, and/or bartered, paid for or were rewarded with forced sex directly with her as payment for look-out services, room rentals, or as a share of profits.

70. The open and apparent nature of R.R.'s forced sex trafficking activity is confirmed by the fact that multiple guests made complaints and wrote bad reviews about sex trafficking activities. For example, multiple guests indicated they had made complaints to R.R. in passing and in publicly available reviews include the following excerpts against the Harboring Defendants:

    a. "Unless you are a drug dealer or a prostitute, you should NEVER stay here…There is a serious crime problem at this motel…"

    b. "…Drug deal was going on in the elevator, I had to take the stairs, and the outside door was propped open, I'm guessing for multiple people to come in and out as they please…It was pretty much a trap house hotel…"

    c. "Staff is clearly involved in criminal activities… proceeded to threaten me and kept my money based on an obvious connection to a known child predator…"

### ▪ VICTIM'S VOICE, LLC ▪

71. While actively participating in this sex-trafficking venture with her traffickers Harboring Defendants were acting in the course and scope of their employment specifically and explicitly for the benefit of their employers and of the hotel.[6]

72. The actions and knowledge of the Harboring Defendants, taken within the course of their employment for Defendants' benefit, are imputed to the Harboring Defendants. *Doe v. Hotels*, 2024 WL 2955728, at *5.

73. Additionally, R.R. witnessed clear signs of forced sex trafficking of other victims that the Harboring Defendants knew or should have been aware of:

   a. R.R. saw other sex traffickers and their victims openly operating and being forcibly escorted to and from the rooms by other traffickers at the subject hotels during the time that she was being trafficked at Harboring Defendants' property;

   b. R.R. saw at many other sex traffickers and their victims openly operating at the subject hotels during the time that she was being trafficked at Defendants' property;

   c. R.R. believes she was just one of many other sex trafficking victims similarly trafficked at the subject hotels during the same time;

   d. R.R. met other sex trafficking victims at the subject hotel, some who appeared to be minors during the time that she was trafficked there;

   e. R.R. witnessed other victims in their sexually explicit "uniforms" loitering around the subject hotels in plain view of the Harboring Defendants with visible signs of coercion (cuts, abrasions, bruises, bandages, etc.);

   f. R.R. witnessed other victims in plain view of the Harboring Defendants strung out on drugs;

   g. R.R. witnessed other victims in plain view of the Harboring Defendants looked

---

1.   [6] The TVPRA permits agency liability. *Doe v. Hotels*, 2024 WL 2955728, at *5 (M.D. Fla. 2024) (citing *Treminio v. Crowley Maritime Corporation*, 649 F.Supp.3d 1223, 1232 (M. D. Fla. 2023), 649 F. Supp. 3d at 1232 (collecting cases and declining to dismiss TVPRA claim against corporation for violative acts of its employees)). An employer can be held liable for the tortious or criminal act of an employee if the act was committed during the course of employment to further a purpose or interest of the employer. *Id.* (citing *Doe v. St. John's Episcopal Par. Day Sch., Inc.*, 997 F. Supp. 2d 1279, 1287–88 (M.D. Fla. 2014)).

exhausted and haggard due to forced sex work at all hours of the day for many days at a time;

h.   R.R. witnessed other victims in plain view of the Harboring Defendants in their "uniforms" inappropriately for the location and weather;

i.   R.R. witnessed other victims making repeated trips to the parking lot to deposit cash with traffickers, in plain view of the Harboring Defendants often the traffickers had much nicer vehicles than you would expect at a budget hotel;

j.   R.R. witness other victims with obvious "Johns" traveling in and out of the hotel rooms in plain view of the Harboring Defendants' owner, managers, employees;

k.   R.R. witnessed other victims and their traffickers propping open doors, and she noticed doors propped open after hours so "Johns" might have easier access.

74. The Harboring Defendants certainly knew or should have known that R.R. was being forcibly sex trafficked on their property. In fact, they wittingly participated in this venture by harboring R.R. for sex trafficking, ignoring the obvious signs and purposely eschewing their own policies to increase their profits.

### R.R. was Harbored as Part of Sex Trafficking Enterprise

75. Zaya and the Harboring Defendants participated in a sex trafficking enterprise that worked like this:

a.   Zaya booked a room at Harboring Defendants' hotel requesting a specific type of room—either in the trafficking wing, secluded from the rest of the guests, or with sight lines to the road so law enforcement can be easily spotted (a clear sign of sex trafficking and a dog whistle for the Harboring Defendants that Zaya had a prior relationship there) (this would be done upon check-in if the first night was rented online or through a corporate website);

b.   Zaya posted internet ads for R.R.'s commercial, sexual availability using hotel Wi-Fi from his "burner" phone, typically from the parking lot. "Johns" would call, R.R.'s price was negotiated, and the "John" was sent to the room;

c.   The "John" was either met in the lobby and escorted to the room; the "John" would request R.R.'s room number from hotel staff; or the "John" would otherwise be directed to R.R.' room (10-15 "Johns" per night, 20-minute stays to the same room

is a clear sign of trafficking);

d. The "John" paid R.R. for the commercial sex act in the room, the act was consummated, and the "John" would leave. R.R. then exited the room, ran to the parking lot and deposited the cash with Zara was loitering in his car in the lot (clear signs of trafficking);

e. While R.R. performed sex acts with the "John," Traffickers loitered in the parking lot of the hotel, often in a luxury vehicle with aftermarket modifications, which doubled as his office, where he ran the trafficking enterprise (clear signs of trafficking);

f. During the busiest hours of the evening, hotel staff looked out for law enforcement, and disturbances or complaints by other guests, warning Zaya or R.R. of same so the enterprise would not be disrupted (awareness of trafficking);

g. Sometimes, based on tips or suggestions from Harboring Defendants, R.R.'s room would be relocated (clear sign of trafficking);

h. In the morning, Zaya used cash from the previous night's trafficking as payment to rent the room(s) for just one additional night so R.R. could again be sex trafficking on an ongoing basis, and sometimes tips would be presented to Harboring Defendants at this time; this process would be repeated over and over even during long-term stays at the harboring hotel (clear signs of trafficking);

i. R.R.'s Traffickers also engaged in the commercial sale of illegal drugs on premises with sales taking place either in the hotel room or in public areas of the hotel often to hotel staff;

j. Zaya routinely stayed at the subject hotels for consecutive weeks but always only paid for one night at a time (a clear sign of sex trafficking);

k. R.R. and Zaya would have little to no luggage or personal possessions for extended stays and she always wore her "uniform" (a clear sign of sex trafficking);

l. R.R. was confined her room for long periods of time, but would occasionally loiter on property soliciting Johns when the occasion arose and she rarely was seen leaving the premises, and without Zaya or another, often significantly older handler at least closely observing her (a clear sign of sex trafficking);

m. R.R. and Zara's rooms consistently displayed "Do Not Disturb" signs on the doors to the room where the Plaintiff was engaged in commercial sex acts often for weeks at a time (a clear sign of sex trafficking);

    n.  "Johns" frequently entered and left R.R.'s room at all times of day and night – typically 10 to 15 times a night (a clear sign of sex trafficking) – and they never had luggage, bags or any indication they were guests;

    o.  After a few weeks of safe harbor and cooperation from the Harboring Defendants, Traffickers would take R.R. to a new property temporarily, only to return shortly for another extended stay in the safe confines of the present hotel.

    p.  16-year-old R.R. was forced to be a sex slave for 6 years of her life when she should have been with her family, out making friends and living the life of a teen and young adult; possibly even getting married and having her own family; these are years she will never get back.

    q.  The Harboring Defendants aided, abetted, facilitated and encouraged the above activities by warning R.R.'s trafficker regarding police activity, by relocating R.R. to a secluded portion of the Motel to avoid detection by other guests and police, by ignoring Plaintiff's requests for help, by failing to report that R.R. was being forcibly trafficked for sex, and by accepting payment in cash and without identification to conceal Traffickers' illegal activities.

76. For approximately six years R.R. was a sex slave in this enterprise, the routine being repeated with thousands of "Johns," many complaints, contacts between the Harboring Defendants, R.R., and her Traffickers, and yet Harboring Defendants, with all their training, surveillance, observation and expertise chose to participate in the venture for profit rather than intervene on behalf of R.R.

77. Despite many, many indicia of forced sex trafficking taking place every day, openly and obviously, in front of Harboring Defendants, never did it attempt to identify or report the sex trafficking of R.R. (or anyone else).

78. Local police were cognizant of the foregoing routine and conduct from afar, making it impossible for the Harboring Defendants to be ignorant of what was occurring right in front of them.

79. R.R.'s Traffickers operated with little regard for concealment due to an understanding that the Harboring Defendants would look out for the best interest of their joint sex trafficking venture and warn him of police activity, enabling her Traffickers to operate openly, as he had found a venue where they could conduct their operations without disruption.

80. Sex crimes and human trafficking were reasonably foreseeable to the Harboring Defendants and occurring on their premises, specifically against R.R.

81. Additionally, the Harboring Defendants, individually and/or by their actual or apparent agents, servants, franchisees and/or employees, knew or had constructive knowledge that the sale and usage of illegal drugs were being performed on the premises.

82. Thankfully, through much difficulty, R.R. was eventually able to escape the grasp of her Traffickers and the prison the hotel served as. She escaped her captor/trafficker without any aid or assistance from the Harboring Defendants.

83. R.R. has spent a considerable amount of time attempting to regain the life that was stolen from her by being a forced sex slave.

84. R.R. brings this lawsuit expressly to hold the Harboring Defendants accountable for knowingly benefiting from her sexual trafficking.

## VIOLATIONS OF THE TVPRA

85. Section 1591(a) of the TVPRA criminalizes the actions of anyone who knowingly:

(1) recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

### ▪ VICTIM'S VOICE, LLC ▪

**100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700**

knowing, or...in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act[.]

86. Section 1595 of the TVPRA creates two kinds of civil liability: perpetrator liability and participant liability. Since it was first enacted, the statute has allowed the victim to sue "the perpetrator." 18 U.S.C. § 1595(a).

87. The TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator[.]" 18 U.S.C. § 1595(a). A perpetrator under § 1595(a) is "someone who has violated the criminal statute." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021). To establish her claim, Plaintiff must therefore allege sufficient facts that KISHANVB violated 18 U.S.C. § 1591(a); *Doe #1 v. Crowley Mar. Corp.*, 2024 WL 1346947, at *7 (M.D. Fla. Mar. 29, 2024).

**COUNT I – MOTEL 6 OPERATING L.P. AND G6 HOSPITALITY PROPERTY LLC VIOLATED THE TVPRA AS PERPETRATORS**

88. Plaintiff, R.R., hereby adopts and re-alleges each and every allegation in paragraphs one through eighty-seven above and further states:

89. R.R. is a victim of sex trafficking within the meaning of 18 U.S.C §1591 and is thus entitled to bring a civil action under 18 U.S.C §1595 against any the "perpetrator" of any violation of the TVPRA.

90. Defendants, MOTEL 6 OPERATING L.P. and G6 HOSPITALITY PROPERTY LLC, are perpetrators within the meaning of 18 U.S.C §1595 because they violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, they harbored R.R. by renting a room to R.R.'s trafficker and providing him and R.R. with

hospitality services despite knowing or in reckless disregard of the fact that R.R. would be caused, through force, coercion, or fraud, to engage in commercial sex acts while at the Motel 6.

91. To "harbor" is "to give shelter or refuge to." *Doe v. Hotels*, 2024 WL 2955728 (M.D. Fla. 2024) (citing Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/harbor; Safe Harbor, Black's Law Dictionary (11th ed. 2019) ("An area or means of protection")); cf. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th at 723–25 (analyzing plain meaning of TVPRA provisions by using dictionaries to define terms).

92. Providing lodging to someone for the purposes of obtaining his or her labor or services against his or her will constitutes "harboring" under the TVPRA. *Doe v. Hotels*, 2024 WL 2955728 at (quoting *Mouloki v. Epee*, 262 F. Supp. 3d 684, 698 (N.D. Ill. 2017)); see *United States v. Gatlin*, 90 F.4th 1050, 1060 (11th Cir. 2024) (showing that a defendant "harbors" an individual under section 1591(a) when the defendant allows the individual to stay at the defendant's house (citing *United States v. Mozie*, 752 F.3d 1271, 1286 (11th Cir. 2014)); *Jane Doe K.R. v. Choice Hotels*, 2024 WL 4373374, at *8 (M.D. Fla. 2024) (same).

93. Defendants knowingly harbored Plaintiff with actual knowledge or reckless disregard of the fact that force, threats of force, or coercion would be used to force Plaintiff to engage in commercial sex acts. Defendants are therefore liable for "harboring" Plaintiff under the TVPRA. *Doe v. Hotels*, 2024 WL 2955728 at *8.

94. Defendants had both actual knowledge of R.R.'s forced sex trafficking and actually participated in her sex trafficking.

**▪ VICTIM'S VOICE, LLC ▪**

100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700

95. The facts above show that Defendants entered into either an overt or tacit agreement with Plaintiff's traffickers to provide them with rooms, shelter and participation in the trafficking enterprise whereby Plaintiff would be forcibly trafficked for profit.

96. Defendants are perpetrators within the meaning of 18 U.S.C §1595 because they violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, Defendants knowingly received financial benefit by actively participating in a venture that they knew, or were reckless in not knowing, engaged in unlawful sex trafficking. Specifically, Defendants had an informal, implicit arrangement with sex traffickers, including R.R.'s sex traffickers, whereby Defendants received revenue by renting hotel rooms to these traffickers on an ongoing basis despite knowing, or in reckless disregard of the fact, that these rooms would be used as a venue for the forced sexual exploitation of individuals, including R.R.

97. Further, Defendants through their owners, managers, employees and/or agents, actively assisted, aided and abetted R.R.'s Traffickers, and participated in operating his sex-trafficking enterprise by operating as police "lookouts," by relocating R.R. and her Traffickers to rooms at the Motel 6 conducive to forced sex trafficking after other guests complained, by purchasing or bartering for sex with R.R. directly, by aggressively ignoring R.R.'s signs of forced sex-trafficking, and by the other means set forth in the above paragraphs.

98. Further, Defendants had a prior relationship with Zaya in which they were involved in sex trafficking previously, including forced sex trafficking, showing that they knew that Zaya brought her to the harboring hotel for the purposes of sex trafficking.

99. Defendants' violations of 18 U.S.C §1591(a) operated jointly with the other unlawful acts and omissions of Defendants outlined in this Complaint, to cause R.R. to suffer substantial physical and psychological injuries and other harm as a result of being trafficked and sexually exploited.

100. As a direct and proximate result of the above egregious acts of Defendants, R.R. has been permanently injured and damaged physically, emotionally, psychologically, and financially.

WHEREFORE, Plaintiff R.R. demands judgment for damages against the Defendants, MOTEL 6 OPERATING L.P. and G6 HOSPITALITY PROPERTY LLC, in an amount in excess of Fifty Thousand Dollars ($50,000.00), costs, interest, attorneys' fees if allowable by law, and such other and further relief as the Court deems just and proper, both in law and in equity. Plaintiff further demands trial by jury as to all issues triable as a matter of right to a jury.

## COUNT II – MOTEL 6 OPERATING L.P. AND G6 HOSPITALITY PROPERTY LLC BENEFITTED FROM THE FORCED SEX TRAFFICKING OF R.R.

101. Plaintiff, R.R., hereby adopts and re-alleges each and every allegation in paragraphs one through eighty-seven above and further states:

102. Plaintiff was a victim of sex trafficking within the meaning of 18 U.S.C. § 1591 and Defendants, MOTEL 6 OPERATING L.P. and G6 HOSPITALITY PROPERTY LLC, were "beneficiaries" of that sex trafficking within the meaning of 18 U.S.C. § 1595(a)(2).

103. Defendants knowingly received a financial benefit from participating in a venture with Plaintiff's Traffickers, even though they knew or should have known that her Traffickers were engaged in violations of 18 U.S.C. § 1591(a)(1) and 18 U.S.C. § 1591(a)(2). Thus,

Defendant is liable to R.R. as a sex trafficking beneficiary under the TVPRA.

104. Beneficiary liability under the TVPRA arises when a defendant "participat[es] in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a)(2).

105. To establish a TVPRA beneficiary claim pursuant to § 1595(a), the plaintiff must show that the defendants (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA, and (4) that the defendants had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th at 719.

**Defendants Knowingly Benefitted from Zaya's Sex Trafficking Enterprise.**

106. The first element of a TVPRA beneficiary claim requires a plaintiff to allege that defendant "knew it was receiving some value from participating in the alleged venture." *Doe #1 v. Red Roof Inns*, 21 F.4th at 724. For this element, the Court is concerned not with whether Defendants participated in a venture, but only with whether Defendants knowingly benefited from the trafficking enterprise – either "financially or by receiving anything of value." *Id.*

107. In the context of a hotel operator, a plaintiff may establish that a defendant knowingly benefited under the TVPRA by "repeatedly renting rooms that defendant knew or should have known were being used for sex trafficking." *Doe v. Hotels*, 2024 WL 2955728, at *7 (citing *A.D. v. Holistic Health Healing Inc.*, 2023 WL 3004546, at *3 (M.D. Fla. Apr. 19, 2023)).

108. A hotel's receipt of revenue from room rentals is a financial benefit from a relationship with a trafficker sufficient to satisfy the first element of the TVPRA standard. See *Does 1-4 v. Red Roof Inns, Inc.*, 688 F.Supp.3d 1247, 1253-54 (N.D. Ga. Aug. 10, 2023) (receipt of room rental revenue constituted a "benefit" under § 1595(a)).

109. It has been set forth above in detail that Defendants knowingly received such revenue from Plaintiff's trafficker and knew or should have known that R.R. was being sex trafficked. Plaintiff's Traffickers paid Defendants for the hotel rooms in which Plaintiff was trafficked to men for sex. Traffickers selected Motel 6 as the location where Plaintiff was trafficked and either paid directly for the hotel rooms or forced Plaintiff to pay for the rooms in her name. Traffickers were repeat customers at the hotel and had a prior relationship with Defendants, as discussed above.

110. Further, Defendants received more than simply room rentals as a benefit of Traffickers' sex trafficking enterprise. In addition, Defendants received other financial benefits in the form of food sales, beverage sales, parking fees, condom sales, ATM fees, wi-fi fees, and portions of Plaintiff's traffickers' profits in the form of tips, bribes, sexual favors, and payments, from those persons who were engaging in sex trafficking. Defendants received consistent cashflow from Plaintiff's Traffickers and other traffickers from renting multiple rooms over multiple nights over several months and years.

111. Harboring Defendants knowingly benefited from Plaintiff's trafficking through monies coming in through fees from room rentals, Wi-Fi, parking, on-premises vending, tips, kickbacks, portions of Traffickers' profits, ATM fees, etc., and other benefits such as assurances of consistent occupancy, information gleaned from hotel loyalty programs,

attractiveness to other trafficking enterprises, avoiding excessive police attention, etc.

112. There are ample facts described above establishing that Defendants knowingly received revenue from R.R.'s Traffickers with actual or constructive knowledge that she was forcibly sex trafficked.

**Defendants Knowingly Benefitted from Participating in a Venture**

113. To establish the second element of a TVPRA beneficiary claim, a plaintiff must plead facts to establish that the Defendants knowingly benefitted "from participating in a venture." see *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th at 724.

114. "Venture" is defined as an "undertaking or enterprise involving risk and potential profit," and participation as "to take part in or share with others in common or in an association." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th at 724–25. Thus, to plead this element, Plaintiff must allege that Defendants took part in a common undertaking or enterprise with Plaintiff's Traffickers involving risk and potential profit. *Id.*

115. Allegations that a plaintiff's abuser had prior commercial dealings with the operator, which the parties wished to reinstate for profit, establish a hotel operator's participation in a venture with a sex trafficker. *Doe #1 v. Red Roof Inns, Inc.*, 21 F. 4th at 725–26 (citing *Ricchio v. McLean*, 853 F.3d 553, 556–58 (1st Cir. 2017)).

116. Defendants, MOTEL 6 OPERATING L.P. and G6 HOSPITALITY PROPERTY LLC, took part in a common venture involving risk or profit with R.R.'s Trafficker as described in greater detail above, including:

    a. Harboring Defendants provided lodging to Plaintiff's Traffickers for a common goal of the forced sex trafficking and to profit from the forced sex trafficking of R.R.;

b. Harboring Defendants, directly rented rooms to people it knew or should have known were engaged in sex trafficking including the trafficking of Plaintiff;

c. Harboring Defendants, had continuing commercial dealings with Plaintiff's Traffickers, including a course of business that involved accepting cash payments for room reservations, looking out for law enforcement on behalf of Plaintiff's Traffickers while R.R. was being forcibly trafficked, moving Plaintiff's Traffickers and R.R. away from the prying eyes of law enforcement when necessary and providing isolated rooms away from normal foot traffic of hotel guests, but which were easily accessed by sex-trafficking customers by back or side doors, which Defendants, their owner, managers, employees and/or agents would leave unlocked and unmonitored;

d. Harboring Defendants had a continuous business relationship with Plaintiff's Traffickers such that Defendants established a pattern of conduct with said Traffickers;

e. Harboring Defendants associated with Plaintiff's traffickers by facilitating their trafficking enterprise as set forth above, and by facilitating R.R.'s captivity as set forth above;

f. Harboring Defendants ensured that Plaintiff's Traffickers' room rentals were limited to certain areas of the property that were isolated and sequestered, such that the Defendants were aiding in hiding the trafficking from police and others who might report it to the police and was thereby furthering the venture;

g. Harboring Defendants provided discounts and free rooms in exchange for sexually assaulting Plaintiff;

h. Harboring Defendants, shared in Plaintiff's Trafficker's profits, and were given tips and bonuses for being helpful to the Traffickers, sometimes after busy nights or providing information, portions of which were shared directly with Defendants;

i. Harboring Defendants, their owners, managers, employees and/or agents acted as lookouts and informants as part of their scope of duty for the benefit of their employers;

j. Harboring Defendants, purposely crafted a safe environment for the sex trafficking venture by ignoring massive amounts of nightly short-term traffic to R.R.'s room, R.R.'s repeated trips to deposit money to Plaintiff's Traffickers in the parking lot, her pleas to help her escape (including running naked through the lobby and soliciting assistance) and bent its own rental policy by accepting cash for nightly

rentals without ID (from an obvious minor).

    k.  Harboring Defendants observed Traffickers engaging in actions that clearly indicated they were trafficking R.R. (treating her poorly, lacking freedom of mobility, depositing money to Traffickers in the parking lot, paying daily in cash for rooms during extended stays, etc.), and acted to protected the Traffickers and the trafficking enterprise (ignored R.R.'s inappropriate dress, ignored her pleas for help, refused to investigate disturbances or report trafficking to police – even when police inquired, etc.).

117. Defendants had a continuous business relationship with Plaintiff's Traffickers due to their prior sex-trafficking history, which her Traffickers indicated was the reason they returned to the harboring hotel to forcibly sex-traffic R.R., knowing that Defendants, their owners, managers, employees and agents cooperated with and participated in the sex trafficking venture.

118. Harboring Defendants' owner/manager welcomed Plaintiff's Traffickers when they returned to the hotel to begin their sex trafficking enterprise with R.R., making it clear they had prior relations.

119. R.R. had been beaten and raped, and was bruised, cut, marked, emaciated, exhausted, and showed obvious signs of forced sex trafficking when she was first brought to the hotel and first met Harboring Defendants' owner/managers, who ignored her condition when he welcomed Plaintiff's Traffickers back to the harboring hotel; these indicia were visible by Defendants' employees and agents throughout on her confinement at the hotel.

120. Plaintiff's Traffickers had prior commercial dealings with Harboring Defendants in which they sexually trafficked other victims at the hotel in violation of the TVPRA. Plaintiff's Traffickers and Defendants reinstated their prior relationship for profit, and Defendants were aware that R.R. was being used as a sex slave. A hotel operator participates in a

venture with a sex trafficker when the trafficker "had prior commercial dealings" with the operator, "which the parties wished to reinstate for profit." *Ricchio*, 853 F.3d at 555; *Doe #1 v. Red Roof Inns*, 21 F.4th at 725.

121. Harboring Defendants did much more than just rent rooms to sex traffickers and observe signs of trafficking. As stated above, there was a booming sex trafficking business at Defendants' hotel. Other traffickers sold girls for sex at the hotel in the timeframe relevant to R.R.'s being forcibly sex trafficked at the hotel. Plaintiff alone was trafficked to thousands of men during the time that she was captive on the property.

122. Harboring Defendants' owners/managers openly discussed the details of R.R.'s forced sex trafficking in front of her. Zaya never hid the fact that R.R. was being forcibly sex-trafficked from Harboring Defendants' owners, managers, employees or agents, openly abusing her and controlling her in public, forcing her to openly solicit customers on the property, forcibly escorting her to and from the lobby of the hotel in front of Defendants owners, managers, employees and agents, and openly displaying her with bruises, marks, cuts, and other signs of her confinement and abuse.

123. Moreover, the evidence directly links specific conduct by Harboring Defendants' owner, managers, employees and agents to the advancement of Plaintiff's Traffickers' sex trafficking enterprise. Harboring Defendants assisted her Traffickers by acting as lookouts for them, and by informing them of police activity at the harboring hotel, as well as warning them about guest complaints and high visitor traffic drawing unwanted attention to the sex trafficking enterprise.

124. Further, Harboring Defendants' managerial staff directed its employees to relocate Plaintiff in response to complaints and police to assist her Traffickers in concealing the joint trafficking enterprise.

125. Harboring Defendants' owners, managers, employees and agents permitted R.R. and other victims, who were consistently scantily clad, to solicit sex on premises including in and around the lobby and desk area of the hotel.

126. Harboring Defendants' owners, managers, employees and agents maintained an ongoing relationship with Plaintiff's Traffickers.

127. Harboring Defendants' owners, managers, employees and agents failed to act when they saw R.R. openly beaten, abused, injured, and confined while they were present. Defendants' owners, managers, employees and agents nonchalantly ignored the R.R.'s pleas for help and her visibly battered and bruised condition. They saw Plaintiff's Traffickers physically force R.R. back to her room when she tried to escape.

128. Harboring Defendants participated in the profit of a joint sex trafficking enterprise by keeping its rooms rented rather than sitting vacant, by accepting tips, bribes and bonuses from Plaintiff's Traffickers, and by attracting other sex traffickers who became aware that the harboring hotel was a "haven" for sex trafficking where they could operate without the threat of management interference and with safeguards against police interference. There was "profit" for Defendants and Plaintiff's Traffickers alike. Defendants received consistent cashflow and security from Plaintiff's Traffickers renting multiple rooms for multiple nights over 6 years. And Plaintiff's Traffickers profited from operating in an environment that was hospitable to trafficking – one in which hotel employees would,

among other things, not call the police, permit trafficking victims to solicit men in hotel common areas, visit traffickers' rooms to inquire if trafficking victims needed anything, and have sex with trafficking victims.

129. There was also a shared risk for Defendants and Plaintiff's Traffickers, in that police frequently came to the hotel, sometimes to investigate prostitution. Moreover, Defendants took the risk of loss of business due to bad reviews, guest complaints, and damage to the hotel itself from ongoing criminal activity.

130. Defendants participated in a venture where the acts and omissions of its owner, managers, employees and agents served to support, facilitate, harbor, and otherwise further the Traffickers' sale and victimization of Plaintiff for commercial sexual exploitation by repeatedly renting rooms to Plaintiff's Traffickers who they knew or should have known was engaged in the forced sex trafficking of R.R.

131. The above allegations establish that Harboring Defendants participated in a venture with R.R.'s trafficker under the second element of TVPRA beneficiary liability. See *I.R. v. I Shri Khodiyar, LLC*, 723 F.Supp.3d 1327, 1337-38 (N.D. Ga. 2024); *K.H. v. Riti, Inc.*, 2024 WL 505063, at *3 (11th Cir. 2024); *S.Y. v. Marriott Int'l, Inc.*, 2021 WL 2003103, at *4 (M.D. Fla. 2021).

**Venture Violated TVPRA as to Plaintiff**

132. To establish the third element of a beneficiary claim, "the venture in which the defendant participated and from which it knowingly benefited must have violated the TVPRA as to the plaintiff." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th at 725.

### ▪ VICTIM'S VOICE, LLC ▪
100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700

133. The venture between Plaintiff's Traffickers and Harboring Defendants engaged in violations of 18 U.S.C. § 1591(a). Section 1591(a) "makes it a crime to 'knowingly' harbor or solicit a person for commercial sex while 'knowing...that means of force, threats of force, fraud, coercion..., or any combination of such means will be used to cause the person to engage in a commercial sex act'" and also "prohibits anyone from knowingly 'benefit[ting], financially or by receiving anything of value' from 'knowingly assisting, supporting, or facilitating a violation of subjection (a)(1)." *Doe #1 v. Red Roof Inns, Inc.,* 21 F.4th at 725 (citing 18 U.S.C. § 1591(a)).

134. Plaintiff was a victim of human trafficking at the harboring hotel and that her trafficking was the result of an "implicit agreement" between her Traffickers and the harboring hotel owner, managers, employees and agents to facilitate her trafficking through, among other things, the rental of hotel rooms, acting as lookouts and informers for police activity, actively relocating R.R. to a more concealed area of the hotel to help Plaintiff's Traffickers escape detection of his sex-trafficking activities to guests and law enforcement, and by ignoring Plaintiff's cries for help – these are all actions done by the Harboring Defendants specifically on account of and in awareness of R.R.

135. The venture between Plaintiff's trafficker(s) and Harboring Defendants violated the TVPRA with respect to Plaintiff because:

   a. Plaintiff's Traffickers recruited the Plaintiff to participate in commercial sex acts at the Defendants' hotel by, among other reasons, stating that he would take care of the Plaintiff and then using force, coercion, threats and physical violence to force Plaintiff to work as a sex slave;

   b. Plaintiff's Traffickers and Defendants harbored the Plaintiff at Defendants' hotel for the purpose of forcing Plaintiff to engage in commercial sex acts at the property;

c. Plaintiff's Traffickers transported the Plaintiff to the Defendants' hotel for the purpose of Plaintiff participating in commercial sex acts at the hotel;

d. Plaintiff's Traffickers maintained Plaintiff at the Defendants' hotel for the purpose of Plaintiff participating in commercial sex acts at the hotel;

e. The commercial sex acts occurred at the Defendants' hotel in rooms rented by Plaintiff's Traffickers;

f. Plaintiff's Traffickers used force, threats of force, fraud, and coercion to cause Plaintiff to continue to participate in commercial sex acts at the Defendants' hotel including beating the Plaintiff;

g. Plaintiff's Traffickers threatened the Plaintiff with violence against her and her family and used this tactic to cause Plaintiff to engage in commercial sex acts at the Defendants' hotel;

h. Plaintiff's Traffickers de-frauded Plaintiff by falsely telling Plaintiff that they would take care of Plaintiff, and then forcing Plaintiff to work as a sex slave the Defendants' hotel;

i. Plaintiff's Traffickers knowingly, recruited, enticed, harbored, transported, advertised, maintained, and solicited the Plaintiff to engage in commercial sex acts in the Defendants' hotel that Plaintiff's Traffickers rented from Harboring Defendants;

j. Buyers came to the hotel to purchase and purchased the "right" to have sex with Plaintiff from Plaintiff's Traffickers, and then the buyers raped her at the Defendants' hotel;

k. Plaintiff's Traffickers utilized the hotel's wireless internet connection to post advertisements of Plaintiff for the commercial sex acts;

l. Defendants were aware or should have been aware that R.R. was being forcibly trafficked for sex by Plaintiff's Traffickers at the Defendants' hotel but nevertheless continued to rent rooms to Plaintiff's Traffickers for said purpose;

m. Other actions to be proven at trial.

136. The third element of beneficiary liability under the TVPRA is sufficiently pled where the complaint alleges that the plaintiff was sex trafficked in violation of § 1591(a). See *A.D.*

*v. Best W. Int'l, Inc.*, 2023 WL 2955832, at *8 (M.D. Fla. Apr. 14, 2023). Plaintiff R.R. has pled those allegations and satisfied the third element of beneficiary liability under the TVPRA.

**Knowledge that Venture Violated the TVPRA as to the Plaintiff.**

137. To sufficiently plead the fourth element, "the defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA as to the plaintiff." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th at 725. § 1595(a)(2) imposes liability where a defendant "knew or should have known [that the venture] has engaged in an act in violation of this chapter." Id.; see also *Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136, 1155 (N.D. Ala. 2022); *Doe v. Hotels*, 2024 WL 2955728, at *5.

138. In this case, Harboring Defendants' owners, manager, employees and agents actively took steps to facilitate Plaintiff's Traffickers' use of the hotel for the forced sex trafficking of R.R. and worked together with Plaintiff's Traffickers to force her to serve their business objectives of keeping the hotel as fully booked as possible. For example, Harboring Defendants' owner, manager, employees and agents acted as police lookouts; relocated Plaintiff's Traffickers and R.R. to quieter rooms to assist Plaintiff's Traffickers with escaping detection by police or other guests; tailored housekeeping services to provide as little disruption to Plaintiff's Traffickers' sex trafficking of R.R. as possible; permitted R.R. and other girls, all wearing lingerie, to solicit men for commercial sex in the front desk area of the hotel while employees were present and interacted with R.R. and the other girls; solicited R.R. for sex directly; bartered for forced commercial sex with R.R. in

exchange for a free room; nonchalantly ignored Plaintiff's marks, cuts, bruises, burns, and injuries; nonchalantly ignored Plaintiff's pleas for help when she tried to escape or requested help to escape; saw Plaintiff grabbed, kicked and forcibly detained by Plaintiff's Traffickers' during her escape attempts and ignored her plight; accepted payoffs from Plaintiff's Traffickers' in the form of drugs, money and sex for acting as lookouts; etc.

139. Further, Plaintiff showed obvious signs of illegal and forced sex trafficking, including being injured, beaten, emaciated, and was obviously drugged. Moreover, other girls were at the hotel at the same time, and before her presence at hotel, and were either underage or likewise showed signs of physical abuse similar to those of R.R.

140. The Harboring Defendants knew Plaintiff was being trafficked for sex as Plaintiff would walk around in her "uniform" and solicit customers on premises including in the lobby and near the front desk. The hotel rooms in which Plaintiff was trafficked, including the sheets, carpet and walls, would sometimes be soiled with blood when she and her Traffickers left. A steady flow of adult men — sometimes 15 in one night — would go in and out of Plaintiff's hotel rooms each night she was there. One of those rooms was located close to the lobby where all of this could be seen and frequently heard. R.R. and her Traffickers paid in cash daily even during extended stays and knew the staff intimately given the length of their stay(s) and frequency with which they interacted. Given the facts above, Defendants had actual or constructive knowledge that Plaintiff was being forcibly trafficked for commercial sex.

141. The above facts satisfy the fourth element of a knowing beneficiary claim under the TVPRA as to the Plaintiff. See *W.K. v. Red Roof Inns, Inc.*, 692 F. Supp. 3d 1366, 1371

(N.D. Ga. 2023) (finding sufficient evidence of defendants' knowledge of a TVPRA violation where, *inter alia*, commercial sex at the hotel was "obvious" to employees, hotel employees had commercial sex with a plaintiff, and the defendants had an ongoing relationship with plaintiffs' traffickers); *H.B. v. Red Roof Inns, Inc.*, No. 1:22-cv-1181-JPB, Doc. 158 at 18 (N.D. Ga. June 17, 2024) (finding sufficient evidence as to the fourth TVPRA element where hotel employees provided lookout services and assisted in facilitating the trafficking operation).

142. Actual knowledge requires an awareness or understanding of a fact or circumstance. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th at 725. Whereas constructive knowledge is that knowledge which one using reasonable care or diligence should have. *Id.*

143. Here, Plaintiff specifically alleges that Harboring Defendants actually knew and should have known that its undertaking or enterprise with Plaintiff's Traffickers would violate the TVPRA. Therefore, the knowledge element for beneficiary liability is satisfied as the higher standard has been pled.

144. However, the acts set forth above, at the very least, show that Harboring Defendants had constructive knowledge that Plaintiff would be sex trafficked. General allegations of knowledge are sufficient under the TVPRA to meet the knowledge element under the statute. *C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284, 1297 (M.D. Fla. 2021) (citing *Sun Life Assurance Co. of Can. v. Imperial Premium Fin.*, LLC, 904 F.3d 1197, 1215 (11th Cir. 2018)).

145. Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595. Specifically, Defendants had a statutory

obligation not to benefit financially or receive anything of value from a venture that it knew, or should have known, engaged in violating the TVPRA.

WHEREFORE, Plaintiff R.R. demands judgment for damages against Defendants, MOTEL 6 OPERATING L.P. and G6 HOSPITALITY PROPERTY LLC, in an amount in excess of Fifty Thousand Dollars ($50,000.00), costs, interest, attorney's fees if allowable by law, and such other and further relief as the Court deems just and proper, both in law and in equity. The Plaintiff further demands trial by jury as to all issues triable as a matter of right to a jury.

## CAUSATION AND DAMAGES

146. Plaintiff R.R. was harbored at Harboring Defendants' hotel where she was seriously and permanently injured as a direct result of the Harboring Defendants' acts and omissions, in that the Harboring Defendants knowingly permitted, harbored and facilitated illegal sex trafficking ventures to take place at the Defendants' hotel whereby the Plaintiff R.R. was routinely and continuously abused, battered, falsely imprisoned, raped, beaten, starved, forcibly injected with drugs and enslaved.

147. Under the TVPRA, Harboring Defendant(s) are jointly and severally liable for all damages a jury awards to R.R. for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking.

148. More specifically, at all material times, in the quest for profits, the acts and omissions of the Harboring Defendants caused the Plaintiff to suffer:

    a. Forced labor;

    b. Forced confinement without safe means of escape;

    c. Assault and fear;

d. Sickness, dizziness and headaches;

e. Cuts, lacerations, abrasions and other physical harm;

f. Mental anguish, humiliation, exploitation, degradation and mental distress;

g. Suffocation, battery, sexual assault and rape;

h. Shock, fright and post-traumatic stress;

i. Overdose and drug-induced dangers;

j. Forced (sexual) slavery; and

k. Invasion of privacy.

149. As a direct and proximate result of Defendants' acts and omissions Plaintiff suffered substantial physical, emotional, and psychological harm and other damages.

150. Defendants are jointly and severally liable with Plaintiff's Traffickers and any other non-party actors who participated in the trafficking for the indivisible injuries that the venture proximately caused to Plaintiff.

151. Plaintiff brings each and every claim for damages permissible under the law against the Harboring Defendants, who are jointly and severally liable, for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and consequential damages permissible under the law, including, but not limited to the following actual past, present and future damages:

a. Personal injuries;

b. Past, present and future pain and suffering;

c. Disability;

    d.  Disfigurement;

    e.  Mental anguish;

    f.  Loss of the capacity for the enjoyment of life;

    g.  Loss of earning capacity;

    h.  Lost wages;

    i.  Direct damages;

    j.  Incidental and consequential damages;

    k.  Emotional distress damages;

    l.  Necessary medical expenses;

    m.  Life care expenses;

    n.  Physical pain and suffering;

    o.  Physical impairment;

    p.  Attorneys' fees as allowed by law;

    q.  Costs of this action; and

    r.  Pre-judgment and all other interest recoverable as a matter of law;

152. The injuries and harms that Plaintiff R.R. suffered as a result of the Harboring Defendants' negligent operation of the harboring hotel and failure to make the hotel premises safe, are of a permanent and/or continuing nature.

153. Each of the forgoing acts and omissions constitute an independent act of negligence on the part of the Defendants, and one or more or all of the above stated acts were the proximate causes of the injuries and damages sustained by the Plaintiff.

## JURY DEMAND

154. R.R. requests trial by jury.

WHEREFORE, Plaintiff prays for a judgment against the Defendants and for the following:

1) That process and summons issue requiring each Defendant to appear as provided by law to answer the allegations of the Complaint;

2) Plaintiff be awarded actual damages in amounts to be shown at trial;

3) Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from each Defendant;

4) Plaintiff be awarded her attorneys' fees and case expenses as allowed by law;

5) Plaintiff be provided with a trial by jury; and

6) Plaintiff have such other further legal and equitable relief as this Court deems just and appropriate under the circumstances.

DATED this 26th day of August, 2025.

Victim's Voice, LLC
**Attorneys for Plaintiff**
100 N. Federal Hwy, 4th Floor
Fort Lauderdale, FL 33301
Telephone: 754.335.4700
Facsimile: 954.994.0040
Primary email: anthony@victimsvoice.law
Secondary email: vv.001@victimsvoice.law

By: /s/: *Anthony Chiarello*
Anthony Chiarello, Esq.
Florida Bar No.: 73760

## ▪ VICTIM'S VOICE, LLC ▪

**100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700**

Case Number: CACE-25-012918 Division: 25

Filing # 230268447 E-Filed 08/26/2025 03:33:29 PM

## FORM 1.997.   CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.      CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>SEVENTEENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>BROWARD</u>   COUNTY, FLORIDA

<u>R. R.</u>
Plaintiff

Case # _____

Judge _____

vs.

<u>MOTEL 6 OPERATING L.P., G6 HOSPITALITY PROPERTY LLC</u>
Defendant

### II.      AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

### III.      TYPE OF CASE        (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 08/26/2025 03:33:28 PM.****

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☒ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☒ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐ Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☐ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**     **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.**     **NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

   2

**VI.**     **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.**     **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☐ no
    ☒ yes If "yes," list all related cases by name, case number, and court.
    <u>R.R. v. BRE/Florida Wellesley L.L.C., et al; RR v. CPLG West Palm Beach</u>
    <u>L.L.C.; RR v. Motel 6 Operating L.P., et al; RR v. West Palm Hotel Holdings,</u>
    <u>Inc., et al.; RR v. G6 Hospitality Property LLC</u>

**VIII.**     **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.**     **DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☒ yes
    ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ ANTHONY CHIARELLO</u>       Fla. Bar # <u>73760</u>
      Attorney or party                 (Bar # if attorney)

ANTHONY CHIARELLO

(type or print name)　　　　　　　Date　08/26/2025

Filing # 230341993 E-Filed 08/27/2025 12:39:47 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

R.R.,

CASE NO.: CACE-25-012918

PLAINTIFF,

V.

MOTEL 6 OPERATING L.P., a
Delaware limited partnership, and G6
HOSPITALITY PROPERTY LLC, a
Delaware limited liability company,

DEFENDANTS.

_____/

### CORPORATE SUMMONS

**THE STATE OF FLORIDA**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this Summons and a copy of the Complaint in this action on
Defendant by serving:

**G6 HOSPITALITY PROPERTY LLC**
**c/o FLORIDA SECRETARY OF STATE**
**P.O. BOX 6327 TALLAHASSEE, FL 32314**

Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, Anthony Chiarello
Esq., whose address is:

VICTIM'S VOICE, LLC
100 N. FEDERAL HWY, 4th FLOOR
FORT LAUDERDALE, FL 33301

within twenty (20) days after service of this Summons on Defendant, exclusive of the day of service, and
to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney
or immediately thereafter. If Defendant fails to do so, a default will be entered against Defendant for the
relief demanded in the Complaint.

WITNESS my hand and the Seal of this Court, this_____ ,  AUG 28 2025

BRENDA D. FORMAN
Clerk of the Courts

By:_____
As Deputy Clerk

BRENDA D. FORMAN

• **VICTIM'S VOICE, LLC** •

**100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 • Phone: 754-335-4700**

1

**IMPORTANT**

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with this Court. A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a carbon copy or photocopy of your written response to the Plaintiff's Attorney named above.

**IMPORTANTE**

Usted ha sido demando legalmente. Tiene veinte (20) dias, constados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentaria ante este tribunal. Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesada en dicho caso. Si usted no contesta la demanda a tiempo, pudies perder el caso y podria ser despojado de sus ingresos y propiedades, or privado de sus deredchos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatements. Si no conoce a un abogado puede llamar a una de las oficinas de asistencia legal que aparecen en la quia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado del Demanadante).

**IMPORTANT**

Des poursuites judiciaries ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cet'te citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite avec mention du numero de dossier ci-dessus et du nom des parties nomees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocats, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez do deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au corone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

▪ **VICTIM'S VOICE, LLC** ▪

**100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700**

Filing # 230341993 E-Filed 08/27/2025 12:39:47 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

R.R.,

CASE NO.: CACE-25-012918

PLAINTIFF,

v.

MOTEL 6 OPERATING L.P., a
Delaware limited partnership, and G6
HOSPITALITY PROPERTY LLC, a
Delaware limited liability company,

DEFENDANTS.

_____/

### CORPORATE SUMMONS

**THE STATE OF FLORIDA**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this Summons and a copy of the Complaint in this action on
Defendant by serving its Registered Agent:

**MOTEL 6 OPERATING L.P.**
**c/o CORPORATION SERVICE COMPANY**
**251 LITTLE FALLS DRIVE**
**WILMINGTON, DE 19808**

Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, Anthony Chiarello
Esq., whose address is:

VICTIM'S VOICE, LLC
100 N. FEDERAL HWY, 4th FLOOR
FORT LAUDERDALE, FL 33301

within twenty (20) days after service of this Summons on Defendant, exclusive of the day of service, and
to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney
or immediately thereafter. If Defendant fails to do so, a default will be entered against Defendant for the
relief demanded in the Complaint.

WITNESS my hand and the Seal of this Court, this          AUG 28 2025

BRENDA D. FORMAN
Clerk of the Courts

By:_____
As Deputy Clerk

BRENDA D. FORMAN

### ▪ VICTIM'S VOICE, LLC ▪

**100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700**

1

## IMPORTANT

A lawsuit has been filed against you.  You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with this Court.  A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case.  If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a carbon copy or photocopy of your written response to the Plaintiff's Attorney named above.

## IMPORTANTE

Usted ha sido demando legalmente.  Tiene veinte (20) dias, constados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentaria ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considera su defensa debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesada en dicho caso.  Si usted no contesta la demanda a tiempo, pudies perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus deredchos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatements.  Si no conoce a un abogado puede llamar a una de las oficinas de asistencia legal que aparecen en la quia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demandadante).

## IMPORTANT

Des poursuites judiciaries ont cte entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date de l'assignation de cet'te citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite avec mention du numero de dossier ci-dessus et du nom des parties nomees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocats, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez do deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au corone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

### ▪ VICTIM'S VOICE, LLC ▪

**100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700**

2

Filing # 230646714 E-Filed 09/02/2025 01:16:31 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

R.R.,

                    PLAINTIFF,

v.

CASE NO.: CACE-25-012918

MOTEL 6 OPERATING L.P., a
Delaware limited partnership, and G6
HOSPITALITY PROPERTY LLC, a
Delaware limited liability company,

                    DEFENDANTS.

_____/

## **NOTICE OF SIMILAR CASES**

COMES NOW, Plaintiff, R.R., by and through undersigned counsel, and hereby notices

cases with common issues and subject matter filed in different divisions throughout Florida. As

best as possible, the clerks of the various courts were notified of said cases upon filing:

**I.**     **15th Judicial Circuit, Division AO**

    RR v. WESTPORT PLACE PROPERTIES, LLC, et al., Case #50-2025-CA-008670-

    XXXA-MB

**II.**     **15th Judicial Circuit, Division AH**

    RR v. BRE/FLORIDA WELLESLEY L.L.C., et al., Case #50-2025-CA-008693-XXXA-

    MB

**III.**     **15th Judicial Circuit, Division AD**

    RR v. CPLG WEST PALM BEACH L.L.C., Case #50-2025-CA-008675-XXXA-MB

**IV.**     **15th Judicial Circuit, Division AJ**

    RR v. WEST PALM HOTEL HOLDINGS, INC., et al., Case #50-2025-CA-008681-

    XXXA-MB.

▪ **VICTIM'S VOICE, LLC** ▪

**100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700**

1

V.     **17ᵗʰ Judicial Circuit, Division 12**

      RR v.  ESA P PORTFOLIO L.L.C., Case #CACE25012732

VI.    **17ᵗʰ Judicial Circuit, Division 9**

      RR v.  ESA P PORTFOLIO L.L.C., Case #CACE25012737

VII.   **17ᵗʰ Judicial Circuit, Division 18**

      RR v.  DHM INVESTMENTS, INC., Case #CACE25012743

VIII.  **17ᵗʰ Judicial Circuit, Division 5**

      RR v. CPLG FL PROPERTIES L.L.C., Case # CACE25012745

IX.    **17ᵗʰ Judicial Circuit, Division 13**

      RR v. BRE/FLORIDA WELLESLEY L.L.C., et al., Case #CACE25012746

X.     **17ᵗʰ Judicial Circuit, Division 25**

      RR v.  MOTEL 6 OPERATING L.P., et al., Case #CACE25012918

XI.    **17ᵗʰ Judicial Circuit, Division 13**

      RR v.   G6 HOSPITALITY PROPERTY LLC, Case #CACE-25-012926

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 2, 2025, a copy of the foregoing was filed via the Florida

E-Filing Portal and served via E-Service to all counsel of record.

Victim's Voice, LLC
**Attorneys for Plaintiff**
100 N. Federal Hwy, 4th Floor
Fort Lauderdale, FL 33301
Telephone: 754.335.4700
Facsimile: 954.994.0040
Primary email: anthony@victimsvoice.law
Secondary email: vv.001@victimsvoice.law

By: /s/: *Anthony Chiarello*
Anthony Chiarello, Esq.
Florida Bar No.: 73760

▪ **VICTIM'S VOICE, LLC** ▪

**100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700**

Filing # 231110907 E-Filed 09/09/2025 07:24:12 AM

## RETURN OF SERVICE

State of Florida                      County of Broward                      Circuit Court

Case Number: CACE-25-012918

Plaintiff:
R.R.

vs

Defendant:
MOTEL 6 OPERATING L.P. ET AL.

For:
VICTIM'S VOICE LLC

Received by WILLIAM RISER on the 8th day of September, 2025 at 10:52 am to be served on G6 HOSPITALITY PROPERTY LLC C/
O FLORIDA SECRETARY OF STATE, 2415 NORTH MONROE STREET, TALLAHASSEE, FL 32399.

I, WILLIAM RISER, do hereby affirm that on the 8th day of September, 2025 at 12:45 pm, I:

Served a GOVERNMENT OR PUBLIC AGENCY by delivering a true copy of the SUMMONS AND COMPLAINT with the date and
hour of service endorsed thereon by me, to: BERYLLIUM SPALDING as REGULATORY SPECIALIST for G6 HOSPITALITY
PROPERTY LLC C/O FLORIDA SECRETARY OF STATE, 2415 N  MONROE ST  STE 810, TALLAHASSEE, FL 32303 and
informed said person of the contents therein, in compliance with State Statute 48 111

Description of Person Served: Age: 50, Sex: F, Race/Skin Color: BLACK, Height: 5'6", Weight: 250, Hair: BLACK, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in
the judicial circuit in which the process was served  "Under penalties of perjury, I declare that I have read the foregoing document
and that the facts in it are true" F.S. 92 525.  NOTARY NOT REQUIRED PURSUANT TO FS 92.525

WILLIAM RISER
288

ATLANTIC PROCESS SERVICE LLC
350 SE 8TH COURT
POMPANO BEACH, FL 33060
(954) 683-2195

Our Job Serial Number: KDY-2025039025

Copyright © 1992-2025 DreamBuilt Software  LLC  - Process Server's Toolbox V9 0e

Filing # 230341993 E-Filed 08/27/2025 12:39:47 PM

*wH2S8*
*9/8/25*
*12:45 Pm*

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

R.R.,

CASE NO.: CACE-25-012918

PLAINTIFF,

v.

MOTEL 6 OPERATING L.P., a
Delaware limited partnership, and G6
HOSPITALITY PROPERTY LLC, a
Delaware limited liability company,

DEFENDANTS.

_____/

## CORPORATE SUMMONS

c/o Secretary of State
2415 North Monroe Street, Suite 810
Tallahassee, FL 32303
Pursuant to Florida Statute § 48. 181

**THE STATE OF FLORIDA**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this Summons and a copy of the Complaint in this action on Defendant by serving:

**G6 HOSPITALITY PROPERTY LLC**
**c/o FLORIDA SECRETARY OF STATE**
**P.O. BOX 6327 TALLAHASSEE, FL 32314**

Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, Anthony Chiarello Esq., whose address is:

VICTIM'S VOICE, LLC
100 N. FEDERAL HWY, 4th FLOOR
FORT LAUDERDALE, FL 33301

within twenty (20) days after service of this Summons on Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If Defendant fails to do so, a default will be entered against Defendant for the relief demanded in the Complaint.

WITNESS my hand and the Seal of this Court, this_____   AUG 28 2025   _____

BRENDA D. FORMAN
Clerk of the Courts

By:_____
As Deputy Clerk

BRENDA D. FORMAN

▪ **VICTIM'S VOICE, LLC** ▪
100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700
1

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with this Court. A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a carbon copy or photocopy of your written response to the Plaintiff's Attorney named above.

## IMPORTANTE

Usted ha sido demando legalmente. Tiene veinte (20) dias, constados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentaria ante este tribunal. Una llamada telefonica no lo protegera; si usted desea que el tribunal considera su defensa debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesada en dicho caso. Si usted no contesta la demanda a tiempo, pudies perder el caso y podria ser despojado de sus ingresos y propiedades, or privado de sus deredchos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatemente. Si no conoce a un abogado puede llamar a una de las oficinas de asistencia legal que aparecen en la quia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado del Demanadante).

## IMPORTANT

Des poursuites judiciaires ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite avec mention du numero de dossier ci-dessus et du nom des parties nomees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocats, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez do deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au corone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

■ **VICTIM'S VOICE, LLC** ■

100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 • Phone: 754-335-4700

Filing # 231260682 E-Filed 09/10/2025 01:24:20 PM

AFFIDAVIT OF SERVICE FOR MOTEL SIX OPERATING L.P.

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY · FLORIDA

Plaintiff: R.R. v. Defendants: MOTEL 6 OPERATING L.P., a Delaware limited partnership, and G6 HOSPITALITY PROPERTY LLC, a Delaware limited liability company

Case No.: CACE-25-012918

State of Delaware, County of New Castle

I, Selena Cabrera, being duly sworn on oath deposes and says: I am a citizen of the United States, over the age of 18 years, not a party or interested in the above entitled action

Completed service of a Corporate Summons and Complaint and Demand for Jury Trial, to:

MOTEL SIX OPERATING L.P. c/o: Corporation Service Company
251 Little Falls Drive, Wilmington, DE 19808

On September 8, 2025, I brought Service of Process to completion for:

MOTEL SIX OPERATING L.P.
c/o: Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

Hand delivered documents on September 8, 2025 at 11:36 am (ET). I signed into a CSC portal, placed document in a designated CSC basket for acceptance of Service of Process.

This is the procedure for Service of Process at this Registered Agent.

**Service of Process was completed in accordance with the Registered Agent's policy.**

I declare under penalty of perjury under the laws of the State, the foregoing is true and correct

_____ September 9, 2025. Process Server, Selena Cabrera

Process Serving License: Not Required

Sworn to before me on September 9, 2025_____

HERMINIO CABRERA
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires 07-31-2026

My Commission Expires: 07-31-2026

Filing # 230341993 E-Filed 08/27/2025 12:39:47 PM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

R.R.,

CASE NO.: CACE-25-012918

PLAINTIFF,

v.

MOTEL 6 OPERATING L.P., a
Delaware limited partnership, and G6
HOSPITALITY PROPERTY LLC, a
Delaware limited liability company,

DEFENDANTS.
_____/

## CORPORATE SUMMONS

**THE STATE OF FLORIDA**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this Summons and a copy of the Complaint in this action on
Defendant by serving its Registered Agent:

**MOTEL 6 OPERATING L.P.**
**c/o CORPORATION SERVICE COMPANY**
**251 LITTLE FALLS DRIVE**
**WILMINGTON, DE 19808**

Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, Anthony Chiarello
Esq., whose address is:

**VICTIM'S VOICE, LLC**
**100 N. FEDERAL HWY, 4th FLOOR**
**FORT LAUDERDALE, FL 33301**

within twenty (20) days after service of this Summons on Defendant, exclusive of the day of service, and
to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney
or immediately thereafter. If Defendant fails to do so, a default will be entered against Defendant for the
relief demanded in the Complaint.

WITNESS my hand and the Seal of this Court, this         AUG 28 2025

BRENDA D. FORMAN
Clerk of the Courts

By:_____
As Deputy Clerk

BRENDA D. FORMAN

■ **VICTIM'S VOICE, LLC** ■
100 N. Federal Hwy, 4th Floor, Fort Lauderdale, FL 33301 ▪ Phone: 754-335-4700

1

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: **CACE25012918**

JUDGE:   **Olefson, Shari Africk (25)**

R. R.
Plaintiff(s),

vs.

**MOTEL 6 OPERATING L.P., et al**
Defendant(s).

_____/

## UNIFORM CASE MANAGEMENT ORDER
## (CIRCUIT CIVIL GENERAL TRACK)

### ALL PARTIES MUST READ CAREFULLY/STRICT COMPLIANCE IS MANDATORY

THE DEADLINES LISTED HEREIN **MUST** BE **STRICTLY ENFORCED** UNLESS CHANGED BY COURT ORDER. STRICT COMPLIANCE MEANS NO CONTINUANCES OR EXTENSIONS WILL BE GRANTED WITHOUT COURT ORDER UPON WRITTEN MOTION SETTING FORTH GOOD CAUSE, PURSUANT TO IN RE: AMEND. TO FLA. R. CIV. P., NO. SC23-0962 (December 5, 2024), FLA. R. CIV. P. 1.200, FLA. R. CIV. P. 1.460, AND FLA. R. GEN. PRAC. & JUD. ADMIN. 2.545(e).

FAILURE TO ATTEND A <u>MANDATORY</u> CASE MANAGEMENT CONFERENCE MAY RESULT IN THE COURT DISMISSING THE ACTION, ENTERING A DEFAULT, STRIKING THE PLEADINGS, LIMITING PROOF OF WITNESSES, OR ANY OTHER APPROPRIATE ACTION AGAINST THE PARTY FAILING TO ATTEND. (Fla. R. Civ. P. 1.200(j)(6)).

THIS CASE MANAGEMENT ORDER SUPERSEDES ANY PRIOR CASE MANAGEMENT ORDER ENTERED IN THIS CASE.

This case has been designated to the **GENERAL CIVIL TRACK**. The deadlines established by this Order are to ensure the case is disposed of within <u>18 months</u> from the date of service of initial process on the last defendant <u>or</u> 120 days after commencement of the action as provided in rule 1.050, whichever occurs first. Accordingly, the following procedures and deadlines shall be strictly observed by the parties and enforced by the court:

1. <u>SCHEDULING OF A MANDATORY CASE MANAGEMENT CONFERENCE</u>:
   [ **X** ](Applicable if checked): A **MANDATORY** Case Management Conference will be held on zoom in Courtroom **https://17thflcourts.zoom.us/j/975531891** on **12-10-2025 8:45 AM**
   .

   During the case management conference, the Court may elect to hear any pending motion, even if the parties have not identified the motion as an issue to be resolved. Motions for summary judgment and matters requiring an evidentiary hearing may not be heard unless agreed to by the parties and the court. (Fla. R. Civ. P. 1.200(j)(2)).
   **On any matters ruled upon, unless otherwise ordered, within five (5) days following the Case Management Conference, counsel for Plaintiff(s) shall prepare an order pursuant to Florida Rule of Civil Procedure 1.200(j)(5).**

2. <u>COMPLAINT</u>: The Complaint shall be served within 120 days of filing. Failure to perfect service within 120 days shall subject the action to dismissal without prejudice or dropping of that party as a defendant. If plaintiff shows good cause or excusable neglect for failure to serve within 120 days, the court shall extend the time for service for an appropriate period. (Fla. R. Civ. P. 1.070(j)).

3. <u>NOTICE OF SERVICE OF COMPLAINT</u>: Upon service of the complaint on the last of all named defendants in a civil action, the plaintiff will file a Notice of Service and provide a courtesy copy of the Notice of Service to the assigned trial judge. A fillable PDF form "Notice of Service" is available on the Circuit's webpage (www.17th.flcourts.org).

4. <u>TRIAL</u>: Trial will be set in accordance with Florida Rule of Civil Procedure 1.440. The court will issue a separate Uniform Trial Order scheduling Calendar Call and setting the Trial Period. The action no longer needs to be "at issue" prior to the case being set for trial. The failure of the pleadings to be closed will not preclude the court from setting a case for trial.  (Fla. R. Civ. P. 1.440).

5. <u>INITIAL DISCOVERY DISCLOSURES</u>:
   A. Parties must make initial discovery disclosures required by Florida Rule of Civil Procedure 1.280 **within 60 days after the service of the complaint or joinder**, unless a different time is set by court order. Pursuant to Local Rule 10A, a party may file a motion for ex parte relief where no motion for extension of time has been filed and the nonmoving party has completely failed to comply with Florida Rule of Civil Procedure 1.280(a).

   B. A party may not seek discovery from any source before that party's initial disclosures are served on the other party, except when authorized by stipulation or by court order. (Fla. R. Civ. P. 1.280(f)(1)).

   C. As set forth in Rule 1.280(a)(1), initial discovery disclosures include:
      1. The name and, if known, the address, telephone number, and e-mail address of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

2. A copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control (or, if not in the disclosing party's possession, custody, or control, a description by category and location of such information) and may use to support its claims or defenses, unless the use would be solely for impeachment;

3. A computation for each category of damages claimed by the disclosing party and a copy of the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; provided that a party is not required to provide computations as to noneconomic damages, but the party must identify categories of damages claimed and provide supporting documents; and

4. A copy of any insurance policy or agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

D. A party who has made a disclosure under this rule or who has responded to an interrogatory, a request for production, or a request for admission **must** supplement or correct its disclosure or response: (a) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (b) as ordered by the court. (Fla. R. Civ. P. 1.280(g)).

6. NOTICE OF RELATED CASE(S) (i.e., cases involving the same parties, same subject matter or incident, or same property at issue): The Parties shall file a Notice of Related Case(s) within thirty (30) days from the date of this Order identifying any and all related cases.

7. ATTORNEY/PRO SE PARTY PREPARATION: Attorneys and self-represented litigants who appear at a case management conference **MUST** be prepared on the pending matters in the case, be prepared to make decisions about future progress and conduct of the case, and have authority to make representations to the court and enter into binding agreements concerning motions, issues, and scheduling. If a party is represented by more than 1 attorney, the attorney(s) present at a case management conference must be prepared with all attorneys' availability for future events. (Fla. R. Civ. P. 1.200(j)(3)).

8. ATTORNEY/PRO SE PARTY CERTIFICATION AND VERIFICATION REQUIREMENTS OF USE OF AI TECHNOLOGIES:

An attorney may ethically utilize AI technologies but only to the extent that the lawyer can reasonably guarantee compliance with the lawyer's ethical obligations. Attorneys must comply with Florida law and the applicable Rules Regulating the Florida Bar. (*See* Florida Bar Ethics Opinion 24-1 (Jan. 19, 2024)).

If any attorney or pro se party submits to the court any filing or submission containing AI-generated content, that attorney or pro se party must disclose the use of artificial intelligence

on the face of the document **and** also must include a certification that the attorney or pro se party has personally reviewed and verified the content's accuracy. Failure to include this certification or comply with this verification requirement will be grounds for sanctions, as permitted by law.

9. CASE MANAGEMENT DEADLINES:

    A. **DEADLINES IN THIS CASE MANAGEMENT ORDER MUST BE STRICTLY ENFORCED UNLESS CHANGED BY COURT ORDER FOR GOOD CAUSE SHOWN. (Fla. R. Civ. P. 1.200(e)(1)).**

    B. Notices of unavailability and/or inability to comply with the deadlines have no effect on the case management deadlines set by this order. If a party is unable to comply with a deadline, including due to the unavailability of hearing time, the party must take action consistent with Florida Rule of Civil Procedure 1.200(e)(1). (Fla. R. Civ. P. 1.200(f)-(g)).

10. CASE MANAGEMENT AND TRIAL DEADLINES:

The following deadlines apply unless otherwise modified by the Court.

| | EVENTS | COMPLETION DEADLINE |
|---|---|---|
| 1. | Service of Complaint | 120 days from filing; Service under extension is only by court order. |
| 2. | Resolution of all motions/objections directed to the pleadings *(i.e. to dismiss or strike)* | 120 days before Calendar Call (must be set within 10 days of filing to be heard within 60 days) |
| 3. | Pleading Amendments/Adding New Parties | 120 days before Calendar Call |
| 4. | Disclosure of Fact Witnesses/Lists | 150 days before Calendar Call |
| 5. | Disclosure of Expert Witnesses/Lists | 120 days before Calendar Call |
| 6. | Completion of Compulsory Examinations | 120 days before Calendar Call |
| 7. | Disclosure of Rebuttal Witnesses/Lists | 100 days before Calendar Call |
| 8. | Completion of all Discovery (including expert discovery) | 30 days before Calendar Call (must be initiated 90 days before Calendar Call) |
| 9. | Filing of all Dispositive Motions and Motions for Summary Judgment | 90 days before Calendar Call |
| 10. | Expert Challenges and Deposition Objections | 45 days before Calendar Call (must be filed and heard) |
| 11. | Filing of all Pretrial Motions (including Motions in Limine) | 30 days before Calendar Call |

Case Number: CACE25012918

| | | |
|---|---|---|
| 12. | Deposition Designations | 20 days before Calendar Call |
| 13. | Deadline for Mediation | 60 days before Calendar Call |

11. <u>WITNESS LISTS</u>**:**

    **A. NO LATER THAN ONE HUNDRED AND FIFTY (150) DAYS PRIOR TO CALENDAR CALL:**

<u>Fact Witnesses</u>:
Parties must file and serve a list of names and addresses of all fact witnesses who are expected to testify at trial. Each party's fact witness list must include a brief description of the substance and scope of the testimony to be elicited from such witness. Both sides must cooperate in the scheduling of such witness depositions.

    **B. NO LATER THAN ONE HUNDRED AND TWENTY (120) DAYS PRIOR TO CALENDAR CALL:**

<u>Expert Witnesses</u>:

    1. At the time of disclosure of all expert witnesses, the parties shall file and serve the names and addresses of all expert witnesses to be called at trial, including their complete and updated curriculum vitae, and all information regarding expert testimony that is required by Fla. R. Civ. P. 1.280(c)(5). Parties shall furnish opposing counsel with two (2) alternative dates of availability of all expert witnesses for the purpose of taking their deposition. Both parties shall cooperate in the scheduling of expert depositions.
    2. The parties shall also provide answers to standard form expert interrogatories pursuant to Fla. R. Civ. P. 1.280(c)(5). All reports or other data compiled by each disclosed expert which is intended to be used by the expert and/or referred to during his/her deposition testimony shall be provided electronically to the opposing party at least 72 hours prior to the date of the scheduled deposition.

    **C. NO LATER THAN ONE HUNDRED (100) DAYS PRIOR TO CALENDAR CALL:**

<u>Rebuttal Witnesses</u>:
Parties must file and serve a list of names and addresses of any rebuttal witnesses within one hundred (100) days prior to Calendar Call.

12. <u>COMPULSORY MEDICAL EVALUATIONS ("CME")</u>**:**

    **A. NO LATER THAN ONE HUNDRED AND TWENTY (120) DAYS PRIOR TO CALENDAR CALL:**

All CME and other examinations pursuant to Florida Rule of Civil Procedure 1.360 must be

completed no later than one hundred and twenty (120) days prior to Calendar Call.

13. <u>DISCOVERY DEADLINES</u>**:**

**A. NO LATER THAN NINETY (90) DAYS PRIOR TO CALENDAR CALL:**

All final discovery must have been <u>initiated</u> at least ninety (90) days prior to Calendar Call.

**B. NO LATER THAN THIRTY (30) DAYS PRIOR TO CALENDAR CALL:**

Parties must <u>complete</u> all discovery, including expert discovery in accordance with Florida Rule of Civil Procedure 1.280(c)(5), at least thirty (30) days prior to Calendar Call. Discovery conducted after this time period is strongly disfavored and will only be permitted by order of the Court under exceptional circumstances.

**C. ELECTRONICALLY STORED INFORMATION (ESI) DISCOVERY:**

ESI discovery procedures are governed by Seventeenth Judicial Circuit Administrative Order 2021-20-Gen, a copy of which is available on the Circuit's webpage (www.17th.flcourts.org).

14. <u>MOTIONS</u>**:**

**A. CONFERRAL PRIOR TO FILING MOTIONS:**

Before filing a non-dispositive motion, the movant **MUST** confer with the opposing party in a good-faith effort to resolve the issues raised in the motion **AND** at the end of the motion and above the signature block, the movant **MUST** include a certificate of conferral. (Fla. R. Civ. P. 1.202(a)-(b)). **The parties are expected to confer and attempt to resolve the issues raised in the motion before reserving hearing time**.

The requirements of rule 1.202 do not apply when the movant or the nonmovant is unrepresented by counsel (pro se). (Fla. R. Civ. P. 1.202(c)).

**B. NO LATER THAN ONE HUNDRED AND TWENTY (120) DAYS PRIOR TO CALENDAR CALL:**

1. <u>Motions to Add a Party or Parties or to Amend the Pleadings</u>: must be filed and set for hearing no later than one hundred and twenty (120) days before Calendar Call absent good cause shown. The deadline shall not conflict with Florida Rule of Civil Procedure 1.190(e), and the motion may be denied if there has been undue delay, bad faith, prejudice to the opposing side, dilatory motive on the part of the moving party or when the amendment would be futile.

2. <u>Motions/Objections Directed to the Pleadings</u>: all objections to the pleadings must be filed and set for hearing no later than one hundred and twenty (120) days before Calendar Call. **The motion/objection MUST be set within ten (10) days of filing of**

the motion/objection to be heard within sixty (60) days.

### C. NO LATER THAN NINETY (90) DAYS PRIOR TO CALENDAR CALL:

1. <u>Motions for Summary Judgment and other Dispositive Motions</u>: must be filed no later than ninety (90) days before Calendar Call. Motions for summary judgment will not be heard at or after Calendar Call unless approved by the court. If the Court has granted the parties' request for a hearing on the motion, but a hearing is not available prior to the deadline, the parties shall submit the fully briefed motion and opposition (if any) to the court prior to the expiration of the deadline, and the court can rule on those motions on the papers.  Failure to timely submit the paperwork to the court will deem those motions abandoned.

2. <u>Response to Motion for Summary Judgment</u>: the response and supporting factual position must be served no later than forty (40) days after service of the motion for summary judgment. (Fla. R. Civ. P. 1.510(c)(5)).

### D. NO LATER THAN FORTY-FIVE (45) DAYS PRIOR TO CALENDAR CALL:

1. <u>Expert Challenges</u>: motions challenging an expert witness ("Expert Challenges"), must be filed and heard no later than forty-five (45) days before Calendar Call.

2. <u>Deposition Objections</u>: objections raised in depositions expected to be introduced at trial must be filed and heard no later than forty-five (45) days before Calendar Call.

### E. NO LATER THAN THIRTY (30) DAYS PRIOR TO CALENDAR CALL:

1. <u>Motions in Limine</u>: must be filed no later than thirty (30) days prior to Calendar Call.  If the Court has granted the parties' request for a hearing on the motion, but a hearing is not available prior to the deadline, the parties shall submit the fully briefed motion and opposition (if any) to the court prior to the expiration of the deadline, and the court can rule on those motions on the papers.  Failure to timely submit the paperwork to the court will deem those motions abandoned.

2. <u>Pretrial Motions</u>: must be filed and heard no later than thirty (30) days prior to Calendar Call. All motions, other than motions in limine, not heard before Calendar Call will be deemed abandoned.

### F. NO LATER THAN TWENTY (20) DAYS PRIOR TO CALENDAR CALL:

1. <u>Deposition Designations</u>: no later than twenty (20) days prior to Calendar Call, each party must serve designation of depositions, or portions of depositions, each intends to offer as testimony.

15. <u>JOINT PRETRIAL STIPULATION</u>:

## A. NO LATER THAN TEN (10) DAYS PRIOR TO CALENDAR CALL:

1. The Joint Pretrial Stipulation contemplates a single document that must be filed and served, **with a courtesy copy served on the undersigned judge**, no later than ten (10) days prior to Calendar Call.
2. The Joint Pretrial Stipulation requires that all agreed matters be fully identified and any disputed matters be specifically delineated with respect to each party.

## B. THE JOINT PRETRIAL STIPULATION MUST CONTAIN THE FOLLOWING IN SEPARATELY NUMBERED PARAGRAPHS:

1. <u>Statement of the Facts</u>: A concise, impartial statement of the facts of the case.
2. <u>Stipulated Facts</u>: A list of those facts that can be stipulated and require no proof at trial.
3. <u>Statement of Disputed Law and Fact</u>: A concise, impartial statement of those issues of law and fact that are to be tried.
4. <u>Exhibit Lists</u>: Each party must separately list all exhibits they intend to introduce into evidence. Each item must be listed by number and description on a separate schedule attached to the Joint Pretrial Stipulation. Each exhibit must be specifically described. **Generic descriptions of exhibits are subject to being stricken.** If any party objects to the introduction of any such exhibit, such objection **must be stated in the Joint Pretrial Stipulation**, setting forth the grounds with specificity. All exhibits must have been made available to all parties for examination no later than ten (10) days before Calendar Call. Parties must initial each other's exhibit lists and exhibits. **At trial, only those exhibits properly listed and initialed may be offered into evidence**.
5. <u>Demonstrative Exhibits</u>: all demonstrative exhibits (e.g., charts, graphs, enlargements of exhibits, etc.) intended to be used at a jury trial must be displayed to all parties at least ten (10) days before Calendar Call. **Objections to a demonstrative exhibit must be disclosed in the pretrial stipulation or will be deemed waived.**
6. <u>Witness Lists</u>: Parties must furnish a written list containing the names and addresses of all witnesses intended to be called at trial in alphabetical order. Such list must designate the type of witness ("expert," "rebuttal," "impeachment," or otherwise) and must be attached to the Joint Pretrial Stipulation. All fact witness lists must include a brief description of **the substance and scope of the testimony** to be elicited from such witness. All expert witness lists must **designate the expert's specialties**. If any party objects to any witness, such objection must be stated in the Joint Pretrial Stipulation, setting forth the grounds with specificity. **At trial, only those witnesses properly and timely disclosed will be permitted to testify**.
7. <u>Jury Instructions</u>: If the trial is a jury trial, the parties must identify all agreed upon standard instructions and all special instructions. Copies of all agreed upon jury instructions and disputed jury instructions must be attached to the Joint Pretrial Stipulation identifying the party that proposed the instruction, along with copies of supporting statutory citations and/or case law.
8. <u>Verdict Forms</u>: If the trial is a jury trial, the jury verdict form must be designated as

"agreed to" or "disputed" and must be attached to the Joint Pretrial Stipulation.

9. <u>Peremptory Challenges</u>: If the trial is a jury trial, the number of peremptory challenges for each party must be stated and attached to the Joint Pretrial Stipulation.

10. <u>Pending Motions</u>: Parties must set forth a list of all pending motions with copies attached to the Joint Pretrial Stipulation.

11. <u>Trial Estimate</u>: Each party must provide an estimate of the number of trial days required for presenting its side of the case.

12. <u>Expert Challenges</u>: All motions challenging an expert witness must be filed and heard no later than forty-five (45) days before Calendar Call. FAILURE TO DO SO MAY CONSTITUTE A WAIVER OF ANY EXPERT RELATED EVIDENCE ISSUE(S). It is within the discretion of the Court to remove any case with pending expert issues.

16. <u>COURT POLICIES</u>:

A. Parties must do all things reasonable and necessary to assure the availability of witnesses for the entire Trial Period or to otherwise preserve witness testimony for trial as provided by the Florida Rules of Civil Procedure. *See* Fla. R. Civ. P. 1.300 & 1.460; *see also* Fla. R. Gen. Prac. & Jud. Admin. 2.545.

B. The requirements of this Order cannot be waived by stipulation **absent prior approval from the Court** pursuant to written agreement between the parties.

C. This Order may be tailored by the assigned Division Judge to conform to the particular requirements of the residential foreclosure and complex litigation divisions.

D. At trial, there will only be one (1) official record transcribed by one (1) court reporter. Plaintiff is responsible for arranging for a court reporter unless otherwise agreed to by the parties. If a conflict exists, the parties must resolve it among themselves prior to Calendar Call.

17. <u>TRIAL CONTINUANCES</u>:

A. The parties must satisfy the requirements of Rule 1.460 to change the trial period.

B. **A motion to continue is disfavored and will rarely be granted. No continuances will be granted without Court Order upon written motion setting forth good cause pursuant to In re: Amend. to Fla. R. Civ. P., No. SC23-0962 (December 5, 2024), Fla. R. Civ. P. 1.460, and Fla. R. Gen. Prac. & Jud. Admin. 2.545(e). All motions seeking a continuance must comply with Fla. R. Civ. P. 1.460 and Fla. R. Gen. Prac. & Jud. Admin. 2.545.**

C. A motion to continue trial must be in writing unless made at trial and, except for good cause shown, must be signed by the named party requesting the continuance. The motion must be filed promptly after the appearance of good cause to support such motion. Failure to properly request a continuance may be a basis for denying the motion to continue. (Fla. R. Civ. P. 1.460(b)-(c) and Fla. R. Gen. Prac. & Jud. Admin. 2.545(e)).

D. All motions for continuance, even if agreed, must state with specificity as set forth in rule 1.460(d).

E. **NO** CONTINUANCES will be granted based on the lack of due diligence in preparing for trial.

F. **NO** CONTINUANCES will be granted for reasons that should have been readily apparent to the parties when this Order was issued.

G. **NO** CONTINUANCES will be granted if expert witnesses are unavailable because testimony may be preserved by deposition.

H. **NO** CONTINUANCES will be granted for reasons relating to the failure to follow this Order.

I. If a continuance is granted based on the dilatory conduct of an attorney or named party, the court may consider imposing sanctions on the attorney, the party, or both.

18. <u>MEDIATION</u>:

A. <u>Mandatory Mediation</u>: must commence no later than sixty (60) days prior to Calendar Call. The parties must comply with Florida Rules of Civil Procedure 1.700, 1.710, 1.720, and 1.730 as to the conduct of mediation. The parties may attend mediation through the use of communication technology (remotely) if mutually agreed upon. The Court will resolve any disagreement as to where or how mediation is to be conducted. Plaintiff's counsel is appointed lead counsel to facilitate and schedule the settlement conference with the mediator and all parties.

The Court appoints:
**SANDRA PERLMAN**
**912 S. ANDREWS AVENUE FORT LAUDERDALE FL 33316**
**sandra@perlmanmediation.com**
**954-303-7610**
as Mediator, unless, within thirty (30) days of service of initial process on the last defendant, the parties choose a different Mediator, and file notice of that choice and the name of the substitute mediator with the Clerk of Court. Failure to attend mediation may result in sanctions.

19. <u>SANCTIONS</u>: All parties should be familiar with Florida Rule of Civil Procedure 1.380 entitled "Failure to Make Discovery; Sanctions" and section 57.105, Florida Statutes, entitled "Attorney's fee; sanctions for raising unsupported claims or defenses; exceptions; service of motions; damages for delay of litigation."

FAILURE TO APPEAR, FAILURE TO FOLLOW TIME REQUIREMENTS, OR FAILURE TO FILE DOCUMENTS REQUIRED BY THIS COURT MAY RESULT IN THE DISMISSAL OF THE ACTION OR THE IMPOSITION OF SANCTIONS INCLUDING THE STRIKING OF PLEADINGS.

20. <u>SETTLEMENT NOTIFICATION</u>: Parties must immediately notify the Court in the event of settlement and submit a stipulation for an Order of Dismissal. Parties shall also cancel any

and all pending hearings as a result of the settlement.

21. <u>COMPLIANCE WITH DIVISIONAL PROCEDURES</u>: Attorneys and self-represented litigants are required to read and comply with the division's procedures located on the 17th Judicial Circuit Court's Website (www.17th.flcourts.org). Failure to do so may result in appropriate sanctions, as permitted by law.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida on **09-11-2025** .


**CACE25012918 09-11-2025 12:04 PM**
_____

CIRCUIT COURT JUDGE


**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 20140, 201 S.E. 6th Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days. If you have a hearing or voice disability you can contact the court through the Florida Relay Service by calling 711.**

CC:
**ANTHONY CHIARELLO, Email : vv.001@victimsvoice.law**
**ANTHONY CHIARELLO, Email : pleadings@victimsvoice.law**
**SANDRA PERLMAN, Email : sandra@perlmanmediation.com**

# IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

**CASE NO.: CACE25012918**

**JUDGE:  Olefson, Shari Africk (25)**

R. R.

      **Plaintiff(s),**

| |
|---|
| **ORDER RESETTING CASE MANAGEMENT CONFERENCE** |

**vs.**

   **MOTEL 6 OPERATING L.P., et al**

      **Defendant(s).**

_____/

## ORDER RESETTING CASE MANAGEMENT CONFERENCE

## ALL PARTIES MUST READ CAREFULLY/STRICT COMPLIANCE IS MANDATORY

| |
|---|
| FAILURE TO ATTEND A <u>MANDATORY</u> CASE MANAGEMENT CONFERENCE MAY RESULT IN THE COURT DISMISSING THE ACTION, ENTERING A DEFAULT, STRIKING THE PLEADINGS, LIMITING PROOF OF WITNESSES, OR ANY OTHER APPROPRIATE ACTION AGAINST THE PARTY FAILING TO ATTEND. (Fla. R. Civ. P. 1.200(j)(6)). |

     A **<u>MANDATORY</u>** Case Management Conference will be held in Courtroom **15150 or https://17thflcourts.zoom.us/j/975531891** on **01-20-2026  8:45 AM**    of the Broward County Courthouse, located at 201 S.E. 6th Street, Fort Lauderdale, Florida. **The parties are advised that the case management conference date set forth above cancels any case management conference set in this case by prior case management order.**

All counsel and any self-represented parties <u>MUST</u> appear at the hearing and have their calendars to schedule future matters. This hearing may be canceled: (1) If the action is settled and a Final Order of Dismissal is issued; (2) The action is dismissed; or (3) If otherwise ordered by the court.

1. During the case management conference, the Court may elect to hear any pending motion, even if the parties have not identified the motion as an issue to be resolved. Motions for summary judgment and matters requiring an evidentiary hearing may not be heard unless

agreed to by the parties and the court. (Fla. R. Civ. P. 1.200(j)(2)).

2. Attorneys and self-represented litigants who appear at a case management conference **MUST** be prepared on the pending matters in the case, be prepared to make decisions about future progress and conduct of the case, and have authority to make representations to the court and enter into binding agreements concerning motions, issues, and scheduling. If a party is represented by more than 1 attorney, the attorney(s) present at a case management conference must be prepared with all attorneys' availability for future events. (Fla. R. Civ. P. 1.200(j)(3)).

   **IT IS FURTHER ORDERED** that the pretrial procedures and deadlines contained in the operative case management order shall be strictly enforced and remain in effect, unless further ordered by the court.

   **DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida on **09-12-2025** .

CACE25012918 09-12-2025 10:44 AM

**CIRCUIT COURT JUDGE**

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 20140, 201 S.E. 6th Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days. If you have a hearing or voice disability you can contact the court through the Florida Relay Service by calling 711.**

 CC:
**ANTHONY CHIARELLO, Email : vv.001@victimsvoice.law**
**ANTHONY CHIARELLO, Email : pleadings@victimsvoice.law**
**SANDRA PERLMAN, Email : sandra@perlmanmediation.com**